The Carlisle Gas & Water Company and W. M. Henderson, Jr., a taxpayer, for himself and other taxpayers, *v.* The Carlisle Water Company, The American Pipe Manufacturing Company, Contractor, and M. T. Quinn, Subcontractor, Appellants.

*Corporations — Municipal corporations — Water companies —Acts of April* 19, 1853 *and April* 29, 1874—*Boroughs.*

Where a borough is specially authorized by the legislature to subscribe to the stock of a corporation organized to supply the borough with water, with a right to appoint a certain number of the managers, but without the right to participate in the election of the other managers, the works of such company are constructed by the municipality within the meaning of the general corporation Act of April 29, 1874, P. L. 73, which forbids companies organized under that act to construct waterworks where such works have been already constructed by the municipality itself.

Section 12 of the Act of April 19, 1853, P. L. 578, incorporating the Carlisle Gas and Water Company, provided that if the borough of Carlisle should subscribe and take one third or more of the capital stock of the company, the borough should have the right annually to " appoint three managers of the said company, and in that event the election of all other stockholders shall be confined to the president and five managers, and other stockholders shall alone have power to vote at elections and meetings."

The borough subscribed to one third of the stock, and continued to appoint three managers for more than forty years, without participating in the election of the other managers. For eighteen years the company was compelled to expend all of its net earnings in improving and extending its works, so that no dividends could be paid. The borough's representatives always took an active part in the management and the extension of the plant. A corporation organized under the act of April 29, 1874, claimed the right to supply the borough of Carlisle with water. *Held,* that the works constructed by the Carlisle Gas and Water Company were municipal waterworks within the meaning of section 34 of the act of 1874 which forbids a company organized under that act " to construct gas or water works within the limits of any municipality when gas or water

works shall have been constructed by said municipality, without the lawful consent of the authorities thereof:" White v. Meadville, 177 Pa. 643; and Metzger v. Beaver Falls, 178 Pa. 1, followed.

Argued Feb. 18, 1897. Appeal, No. 22, Jan. T., 1897, by defendants, from decree of C. P. Cumberland Co., June T., 1896, No. 6, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Bill in equity to restrain the construction of water works. Before BIDDLE, P. J.

The facts appear by the opinion of the Supreme Court.

The court below granted a preliminary injunction which it subsequently continued.

*Error assigned* was above decree.

*M. E. Olmsted*, with him *J. E. Barnitz*, for appellants.—The conclusion of the learned judge of the court below is based wholly upon the decisions of this court in White v. City of Meadville, 177 Pa. 643, and Metzger v. Beaver Falls Borough, 178 Pa. 1, neither of which, it is respectfully submitted, decides or has any bearing, either directly or indirectly, upon the pending case. Each of these cases involved the authority of the municipality, under its charter, to construct water works. It was in each case held that, by contracting with a private water company for a supply of water, the municipality had exhausted the power conferred by its charter and was without authority itself to construct water works to be maintained in opposition to those which it had procured or encouraged to be constructed by private enterprise. If the borough of Carlisle were attempting to construct water works in opposition to the Carlisle Gas and Water Company, the situation would be identical with those passed upon by this court in the cases cited. But the controversy here is between two private water companies, each supplying, or trying to supply water to the public within the borough of Carlisle. The power of the municipality, which was the only point at issue in the two cases mentioned, is not here involved at all, nor in any way drawn into this controversy.

The complainant has no exclusive privilege: Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568; Act of June 2,

1887, P. L. 310; Warren Gas Light Co. v. Pennsylvania Gas Light Co., 161 Pa. 510.

The uniform language of the English and American law is that all grants of privileges are to be liberally construed in favor of the public; and as against the grantees of the monopoly, franchise, or charter to be strictly interpreted. Whatever is not unequivocally granted in such acts is taken to have been withheld; all acts of incorporation and acts extending the privileges of incorporated bodies are to be taken most strongly against the companies: Sedgwick's Statutory Construction, 292; Charles River Bridge v. Warren Bridge, 11 Peters, 520; Mills v. St. Clair County, 8 Howard, 581; Fertilizing Co. v. Hyde Park, 97 U. S. 659; Penna. R. Co. v. Canal Co., 21 Pa. 9.

An injunction should not be continued except in a clear case of right, and where no doubt exists as to the claim of the complainant to the remedy which is invoked: Phila.'s App., 78 Pa. 33; Minnig's App., 82 Pa. 373; New Boston Coal and Mining Co. v. Pottsville Water Co., 54 Pa. 164; Mammoth Vein Consolidated Coal Co.'s App., 54 Pa. 183.

*John Hays* and *W. F. Sadler*, for appellees.—As to the borough, the right of the plaintiff is exclusive: Gas & Water Co. v. Downingtown Borough, 175 Pa. 341; White v. City of Meadville, 177 Pa. 643; Metzger v. Beaver Falls Borough, 178 Pa. 1.

The right of the plaintiff company is exclusive against all others: Act of June 10, 1881, P. L. 112; Du Bois Borough v. Du Bois City Water Works Co., 176 Pa. 430; Brymer v. Butler Water Co., 172 Pa. 489; Com. v. Russell, 172 Pa. 506; act of April 29, 1874.

The appellant company has no right: Act of April 29, 1874, sec. 34, P. L. 93.

*M. E. Olmsted* and *J. E. Barnitz*, for appellants, in reply.— Henderson has no standing in court: Cumberland Valley R. R. Co.'s App., 62 Pa. 218; Sparhawk v. Union Pass. Ry. 54 Pa. 401.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

The parties to this suit are not correctly given in appellants' paper-book and history of the case. In both, the plaintiff and defendant are the two corporations, and the only parties litigant,

while in fact joined with the Carlisle Gas & Water Company as plaintiff, is a taxpayer of the borough of Carlisle, and presumably a representative of other taxpayers. Therefore, we must assume that the complainants represent both the private and municipal corporations' interest, so far as the latter can be represented by one of its members, undisputably acting for himself and others in a like situation.

The court below enjoined defendant from occupying the streets and highways of the borough without the consent of the councils, on the authority of White v. Meadville, 177 Pa. 643, and Metzger v. Beaver Falls, 178 Pa. 1. Whether this issue is determined by the principles announced in those cases depends on the facts. If, by the state and municipal legislation, under which the Carlisle Gas & Water Company was created and operated from April 19, 1853, the date of its incorporation, down to October 3, 1895, the date of defendants' incorporation, the first named company became a part of the property of the municipality for the performance of a municipal function specially conferred by the legislature, then the borough must be deemed to have exercised its power as concerns a supply of water to the public; it cannot be compelled by mandamus to duplicate municipal action which has been completely performed once, and has accomplished and is accomplishing its purprse.

We do not intimate what the sovereign power, the commonwealth, might authorize a subordinate territorial division to do, or enjoin it to do, in this particular. We speak only of what has been authorized up to this time. Under the act of 1851, the borough had authority to light the streets and provide a supply of water for the inhabitants. As early as October 14, 1852, it, by authority of councils, took steps to provide water; a committee was appointed, with authority to employ an engineer to make surveys, plans and estimates of cost. Nothing further was done directly by the borough for six months thereafter. On April 19, 1853, the Carlisle Gas & Water Company, one of plaintiffs, was incorporated by special act of assembly. Section 12 of that act provides: "That it shall be lawful, and the borough authorities may, in its corporate capacity, subscribe for any number of shares of the stock of the said company, and to enable it to do so, the said borough is hereby authorized to borrow from time to time any amount of money not exceeding the

amount subscribed, and to pledge their property and franchises for the repayment of the same, and if the said borough of Carlisle shall subscribe and take one-third or more of the said capital stock which shall be subscribed for the completion of the said work or works, the town council of the said borough shall annually appoint three managers of the said company, and in that event the election of all other stockholders shall be confined to the president and five managers, and other stockholders shall alone have power to vote at elections and meetings."

About three fourths of the voters then petitioned councils to subscribe for one third the capital stock; accordingly, by ordinance of June 2, 1853, a subscription of $25,000 was authorized on the condition that the whole capital stock should not exceed $75,000, or be increased so that the borough would be deprived of its one third representation in the board of managers. On these conditions the company accepted the subscription; a president and five managers were elected by the company and three were appointed by the borough councils; in the same manner the board has since, a period of more than forty years, been kept up. The condition upon which the borough subscription was made has been observed; the capital has not been increased. By the charter, the power of the company to borrow money was limited to $50,000. When the works were finished it was heavily in debt, and without credit; in this state of affairs the borough subscribed for $35,000 more of its stock, and in payment, issued to the company its bonds in that amount, the company agreeing to provide for the annual interest on the bonds, and secure payment of the principal by a mortgage upon its property and franchise. The agreement was carried out; the company provided for the interest and paid the principal; then the borough surrendered the $35,000 of stock. As its power to increase its capital by issue of new stock was, under its agreement with the borough, limited to $75,000, and its power to borrow, under the law, to $50,000, for eighteen years, the company was compelled to expend all its net earnings in improving and extending its works, so that no dividends could be paid. It follows that the $25,000 invested by the borough must now equal in cost more than double that amount. To obtain authority by amendment of its charter to furnish light, the company, in 1888, accepted the provisions of the new constitution,

and, to carry out the additional power and purpose, further expenditure was involved, the whole sum, from the beginning, amounting to $230,000.  The capital stock, however, paid in has stood at $62,500, and there is a debt of $48,000.  The increase in cost of improvements has been provided for, except this indebtedness, out of earnings.  During all the years the plant has been operated, the borough's representatives on the board, took an active, often an initiatory part in the management; voted for new extensions for reaching the public, improvements for purifying the water, and in all respects acting with the authority of a municipal part owner of the plant.

The act of 1853, incorporating the company, authorizes it to introduce " into the borough of Carlisle a sufficient supply of gas and pure water."  The borough act of 1851 empowered the borough " to light the streets and provide a supply of water for the inhabitants."  It is obvious from the facts stated that neither corporation was of sufficient financial ability to exercise singly the power conferred; therefore, under the legislation designed for that purpose, they united their strength, and accomplished fully the object; for, whatever conflict there may be in the testimony, the decided weight of it shows that with fourteen miles of mains, pipes, pumping stations and filter plants, the public have a sufficient supply of pure water.  Such a combination as was made in this instance, in the absence of legislative authority, would have been ultra vires as to both; for there is no implied authority in a municipal corporation to share its government by regularly elected councilmen, with the directors of a private corporation; nor in a private corporation, whose business must be conducted by the directors elected by the stockholders, with the representatives of a municipal corporation. But section 12, before quoted, of the water company's charter, expressly authorizes this hybrid organization and operation by virtue of it.  Under the act of 1851 and its supplements, the borough could have either constructed its own waterworks or have contracted with a private corporation for a supply of water; under this act of 1853, it is authorized to join a private corporation in the business; not in the capacity of a stockholder alone, its power and representation thereafter to be determined by a majority of the stockholders, but it is given for the future a fixed representation, one third, not subject to change by the two

thirds majority; and this one third or three managers, are not to be elected by the whole body of stockholders, but are to be appointed by the municipality, the latter to have no vote in the election of the other six. We admit, if, as argued by the learned counsel for appellant, the borough had been merely authorized to subscribe for stock in a private water company, as many municipalities were about that time and prior thereto, authorized to subscribe for stock in railroad and turnpikes, that mere authority would not have changed the character of the corporation and made it a mixed municipal and private one. But here there was more than authority to invest the taxpayer's money; the investment was to be followed by municipal government in expenditure and management, by a fixed representation appointed by the municipality, over which appointment the stockholders of the corporation had not the least control; neither could the municipality exercise any control as stockholders in the appointment of the other six managers; they had more than the rights of stockholders in the appointment of three managers; they had none whatever in the appointment of the other six. It was, apparently, the intention to create in the borough an undivided one third ownership of the works. Clearly, to this extent, by express legislative authority, they were borough water works. But whether an authorized municipal partnership in water works, or an authorized municipal fractional ownership in a corporation to supply water to the borough, it takes this water company out of the list of exclusively private corporations, and to a certain extent constitutes it a public or municipal institution.

The defendants, an exclusively private corporation, now claim the right, under the general corporation act of 1874, to also supply the borough of Carlisle with water and, for that purpose, assert the right to enter upon its streets and alleys, to dig trenches and lay its water mains alongside those laid in part at a large expense to the taxpayers by the borough itself. Section 34 of the act of 1874, under which defendant is incorporated reads as follows:

"That nothing in this section contained shall authorize a company incorporated under the provisions of this act to construct gas or waterworks within the limits of any municipality, when gas or waterworks shall have been constructed by said

municipality, without the lawful consent of the authorities thereof."

The manifest intention of this provision is to protect municipalities that have expended their money in supplying their inhabitants with water from the destruction of such investments by competitive corporations. And even if the expenditure has not been made by the erection of works exclusively under municipal control, the contribution made in this case, in the manner, and under the authority given, was, to the extent of the expenditure, a construction of municipal water works. The case is, therefore, within the spirit of the statute, if not within the exact words, and is controlled by the principles laid down in White v. Meadville and Metzger v. Beaver Falls, supra, and the decree of the court below should be affirmed.

It is affirmed accordingly at costs of appellants.