The Carlisle Gas and Water Company and William M. Henderson, Jr., v. The Carlisle Water Company, The American Pipe Manufacturing Company, contractor, and M. P. Quinn, subcontractor, Appellants.

*Municipalities—Boroughs—Water supply.*

Under present legislation a municipality is authorized to adopt one of two methods to supply itself with water: (1) it may construct and operate its own works by municipal taxation, or (2) it may contract with a private corporation to construct works and supply the municipality.   It has no power to adopt both methods and have them in operation at the same time.   The selection of one is necessarily under the law a final rejection of the other as long as the first continues the supply according to law.

Where a borough has by legislative authority exercised its municipal function to supply itself with water through its ownership of stock and participation in the management of a private corporation, it cannot, by

selling its stock and divesting itself of such management, acquire the right to make a contract with another corporation to supply the borough with water.

Argued April 26, 1898.  Appeal, No. 134, Jan. T., 1898, by defendants, from decree of C. P. Cumberland Co., June T., 1896, No. 6, on bill in equity.  Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ.  Affirmed.

Bill in equity for an injunction.  Before BIDDLE, P. J.

From the record it appeared that after the decree of October 17, 1897, granting a preliminary injunction had been affirmed by the Supreme Court (182 Pa. 17), and the record returned, the defendants made application to the court for leave to file amendments to their answer, so as to bring upon the record certain ordinances, the substance of the material portions of which are given in the opinion of the Supreme Court.

The court refused to permit the amendments, and entered a decree making perpetual the preliminary injunction granted on October 17, 1897.

*Error assigned* among others was the decree making perpetual the preliminary injunction.

*A. C. Stamm* and *M. E. Olmsted*, with them *J. E. Barnitz*, for appellants.—The Carlisle Water Company having obtained the consent of the municipal authorities of Carlisle, has a right to enter and occupy the streets of the borough.

*John Hays* and *W. F. Sadler*, for appellees.—Where the agency selected furnished a sufficient supply of pure water, no other agency can be created to do the same work: White v. Meadville, 177 Pa. 653; Metzger v. Borough of Beaver Falls, 178 Pa. 1; Wilson v. Boro. of Rochester, 180 Pa. 509.

The borough of Carlisle cannot do indirectly what it cannot do directly.

As a partner with the Carlisle Gas & Water Co., it can do nothing to impair the joint property or to secure a special advantage to itself, and equity will restrain it: Story on Partnership, sec. 33; Marshall v. Johnson, 33 Ga. 500; Bast's App., 70 Pa. 301.

*A. C. Stamm* and *M. E. Olmsted*, with them *J. E. Barnitz*, for appellants in reply.—By the supplement of June 2, 1887, P. L. 310, the exclusive privilege as to water companies was repealed, and since its repeal more than one corporation can be chartered for the supply of water to the public in the same municipality: Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568.

There is no more reason why a private water company should be protected against the competition of another private water company than there is why one electric light company should be protected against the competition of another electric light company, and it has been expressly held by this Court that an electric light company has no exclusive privilege: Scranton Electric Light, etc., Co.'s App., 122 Pa. 154.

As between private corporations, whether water companies, railroad companies, electric light companies, or any other class of companies, this Court and all courts have invariably decided in favor of competition and against monopoly, and have never permitted a claim for an exclusive privilege to stand unless there was an act of assembly so plain that it could not possibly be construed otherwise: Emerson v. Com., 108 Pa. 111; Warren Gas Light Co. v. Penn. Gas Co., 161 Pa. 510; Penna. R. R. v. Canal Commissioners, 21 Pa. 9; Charles River Bridge v. Warren Bridge, 11 Peters, 520; Fertilizing Co. v. Hyde Park, 97 U. S. 659; Sedgwick on Statutory Construction, 222.

OPINION BY MR. JUSTICE DEAN, October 17, 1898:

In Carlisle Gas & Water Company and William M. Henderson v. The Carlisle Water Company, 182 Pa. 17, is a full statement of the facts as they existed up to the date of decree in that case, and we need not repeat them. Our opinion was that the peculiar character of the preliminary organization and future management of the Carlisle Gas & Water Company, as well as the special legislation relative to it, and the action of the borough, made the works, when constructed, in a large degree municipal waterworks. Consequently, they came within the decisions in White v. Meadville, 177 Pa. 643, and Metzger v. Beaver Falls, 178 Pa. 1. Since then two cases have been decided directly on the line of those decisions: Wilson v. Borough of Rochester, 180 Pa. 509, and Welsh v. Beaver Falls, 186 Pa.

578. In all these cases we held that by the present legislation on the subject a municipality was authorized to adopt one of two methods to supply itself with water: 1. It could construct and operate its own works by municipal taxation; or, 2. It could contract with a private corporation to construct works and to supply the municipality with water.

We further held that it could not adopt both methods and have them in operation at the same time; the selection of one was necessarily, under the law, a final rejection of the other as long as the first continued the supply according to law.

Soon after the decree in Carlisle Gas & Water Co. v. Carlisle Water Co., supra, an elaborate ordinance was adopted by the borough council which apparently aims to eliminate the municipal features from the Carlisle Gas & Water Company organization, and give it solely the character of a private corporation, and thus place it on a footing with all other private corporations ministering to the public necessity and comfort. After assuming the power to thus denude itself of its municipal works, it gives formal consent to the Carlisle Water Company to lay its pipes upon the streets and alleys of the borough, and to thereby supply it and the inhabitants thereof with water upon certain conditions, the principal ones being:

1. That the company shall provide fire plugs to be put in and maintained at its own cost by the defendant company, and for a supply free of charge through such fire plugs of all the water required for the extinguishment of fires and for the proper exercise and use of the fire engines and fire companies in the said borough at all times.

2. The borough shall have, before all others, the option to purchase at any time within twenty years the entire plant and property of the company.

3. An agreement shall be made requiring the company, at the election of the borough, within one year after water is introduced, to cause the stock of the borough in the Carlisle Gas & Water Company to be purchased at the value of $28,100.

Under any reasonable view of this borough legislation, accepted by the company, what was it but a contract with a private corporation to supply water for municipal purposes, after the borough had already, in a very peculiar though lawful manner, constructed its own municipal works? As we have decided in the case between the same parties already referred to,: "But

here, there was more than authority to invest the taxpayers' money; the investment was to be followed by municipal government in expenditure and management by a fixed representation, appointed by the municipality, over which appointment the stockholders of the corporation had not the least control; neither could the municipality exercise any control, as stockholders, in the appointment of the other six managers; they had more than the rights of stockholders in the appointment of three managers; they had none whatever in the appointment of the other six. It was apparently the intention to create in the borough an undivided one-third ownership of the works. Clearly, to this extent, by express legislative authority, they were borough waterworks. But whether an authorized municipal partnership in waterworks, or an authorized municipal fractional ownership in a corporation to supply water to the borough, it takes this water company out of the list of exclusively private corporations, and to a certain extent constitutes it a public or municipal institution."

It was also found, on the evidence in that case, that under the legislation then existing, the borough had supplied itself with an abundance of pure water; had exercised the municipal function conferred upon it by the legislature, in adopting one of the methods, municipal works, notwithstanding the hybrid character of the organization. Having done so, its power is exhausted; it cannot enter into another contract with another corporation while that legislation faces it. The plan is an attempt to evade the consequence of the former decree by a somewhat different method, but by one which, when scrutinized, is just as unlawful.

Cannot, asks the appellant, the borough give consent to another company to lay its pipes upon the streets and alleys? That is not the question, and we do not answer it. We hold that it cannot supply by contract with another that which it has itself already supplied by lawfully authorized municipal action. Cannot, again asks appellant, the borough sell its stock in the old company at a fair price? That is not the question either, and we do not answer it, further than to say it cannot sell the old stock at any price as part of the consideration of a contract violative of the law.

The decree of the court below is affirmed, and the appeal is dismissed at costs of appellant.