# Carlisle Gas & Water Company *v.* Carlisle Borough, Appellant.

*Municipalities—Borough—Supply of water and gas—Right to alienate property.*

A borough, or other municipal corporation has the incidental or implied right to alienate or dispose of its property real or personal, of a private nature, held for the emolument and advantage of the municipality, unless restricted by charter or statute.

A borough which has undertaken to supply water to its inhabitants acts in a private, and not a public capacity.

A borough which has purchased the stock of a corporation organized to supply the inhabitants of the borough with gas and water, may sell such stock, unless prohibited from doing so by charter, or by statute. A provision in the ordinance authorizing the purchase of the stock to the effect that so long as the borough held one-third of the stock, it was to have the right to appoint three managers of the company, in no way operates to prevent an alienation of the stock. Even if it should be held that the borough's relation with the company was one of partnership, still it would have the right of a partner to dispose of its interest, subject to the rights, liabilities and equities of the partnership.

Argued April 29, 1907. Appeal, No. 13, Jan. T., 1907, by defendant, from decree of C. P. Cumberland Co., March T., 1906, No. 1, on bill in equity in case of Carlisle Gas & Water Company and Jacob Livingston v. Carlisle Borough. Before MITCHELL, C. J., FELL, MESTREZAT, POTTER and ELKIN, JJ. Reversed.

Bill in equity for an injunction.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was in awarding an injunction to restrain the sale of stock of the Carlisle Gas & Water Company owned by the borough of Carlisle.

*S. B. Sadler* and *D. M. Graham*, for appellant.—The fractional proportion of stock owned by the borough is not held for a public trust: Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478 ; Western Saving Fund Society v. Philadelphia, 31

Pa. 185 ; Baily v. Philadelphia, 184 Pa. 594 ; Brumm's App., 22 W. N. C. 137 ; Jolly v. Monaca Borough, 216 Pa. 345 ; Grant v. City of Erie, 69 Pa. 420 ; Carr v. Northern Liberties, 35 Pa. 324.

A municipality may sell unless expressly forbidden : Terre Haute v. Terre Haute Water Works Co., 94 Ind. 305 ; Newark v. Elliott, 5 Ohio St. 113 ; La Grange, etc., R. R. Co. v. Rainey, 47 Tenn. 420 ; Collner v. Greig, 137 Pa. 606 ; Brown v. Beecher, 120 Pa. 590 ; McCarty v. Emlen, 2 Dall. 277.

*John Hays*, of *Hays & Hays*, for appellees.—The relation was a contractual one : Carlisle Gas & Water Co. v. Carlisle Water Co., 182 Pa. 17 ; Norristown v. Citizens' Pass. Ry. Co., 148 Pa. 87.

The combination of the borough and the company cannot be arbitrarily ended by either : Philadelphia & Reading R. R. Co. v. River Front R. R. Co., 168 Pa. 357.

Opinion by Mr. Justice Elkin, June 3, 1907 :

This is an appeal from the decree of the court below making permanent an injunction to restrain the appellant borough from making sale of the shares of the capital stock held by it in the appellee company. The appellant was created a borough by special act of assembly April 13, 1782, 2 Sm. L. 17, and became subject to the provisions of the general borough act of April 3, 1851, P. L. 320, in the manner provided by law. The appellee company was incorporated by the special act of April 19, 1853, P. L. 578, under which its powers, duties and privileges are defined. It had an authorized capital stock of $100,000, but at the time of its organization by agreement only $75,000 of this amount was to be issued. Twenty-five thousand dollars of the original stock were subscribed and paid for by the appellant, and the remaining $50,000 were either taken, or authorized to be taken, by individuals. The twelfth section of the act authorized the borough in its corporate capacity to subscribe for any number of shares of stock in the appellee company it might choose to take, and in the event that it was concluded to take one-third or more of the capital stock it was provided that the town council should have the right to annually appoint three managers out of a total of nine,

the number fixed by the statute. The borough through its town council at a meeting held June 2, 1853, passed an ordinance authorizing and directing the president of council to subscribe for 1,000 shares of the capital stock of the par value of $25.00 each, upon the terms and conditions stipulated in the charter, and a bond issue to raise the money was provided for. In the fourth section of the ordinance it was stated that the action of council was predicated on the understanding that not more than $75,000 of the whole capital stock should be issued, so that the subscription made by the borough shall amount to one-third of the actual capital stock issued in order that it should not be deprived of its right to appoint three managers on the board. The borough now desires to sell the shares of stock held by it, and has provided by ordinance that said stock shall be advertised for sale, and that written proposals for the purchase of the same in whole or in part be received and considered at a special meeting of council at a time therein designated.

It was successfully contended by appellee in the court below that the borough could not divest itself of ownership of its stock by sale or otherwise, because it was held by the learned judge, sitting as a chancellor, that by the original act of incorporation and the ordinance authorizing the borough to subscribe for stock in pursuance thereof, a contractual relation was created between the parties, and that a sale by the borough of its holdings would be in violation of that relation. It is evident the decision was based upon the understanding of the learned jurist who heard the case of the legal effect of the opinions delivered by this court in Carlisle Gas & Water Company v. Carlisle Water Company, 182 Pa. 17, and Carlisle Gas & Water Company v. Carlisle Water Company, 188 Pa. 51. The rules laid down in these and other water company cases are now settled law and will not be disturbed, but there is no reason, legal or equitable, why the doctrine of those cases should be extended so as to include collateral matters not necessary to their decision. It is conceded, as it must be, that the issue involved in this proceeding was not considered nor determined in those cases. It was argued in the latter case that the borough had a right to sell its stock at a fair price, but Mr. Justice DEAN, who delivered the opinion, said this question was

not raised and would not be answered. The exact question, therefore, raised by this appeal is before this court for the first time and will be so treated. It is familiar law that a borough, or other municipal corporation, has the incidental or implied right to alienate or dispose of its property, real or personal, of a private nature, held for the emolument and advantage of the municipality, unless restricted by charter or statute: Brumm's Appeal, 22 W. N. C. 137; Baily v. City of Philadelphia, 184 Pa. 594. In a late decision of this court it was expressly held that a borough which had undertaken to supply water to its inhabitants acted in a private and not a public capacity: Jolly v. Monaca Borough, 216 Pa. 345. If the supply of water, as in the case last cited, or the supply of gas, as in Baily v. Philadelphia, 184 Pa. 594, by the municipality is construed to be the act of the borough or city as a business corporation and of a private nature, with what reason can it be said, or upon what authority asserted, that the act of a private corporation, as in the present case, in supplying water for the same general purpose is of a public nature? To state the proposition is to answer it. Of course, the act of the private corporation, as of the municipality, is of a private nature.

We come now to the consideration of the question whether the right of alienation was restricted by statute or contract. There is no such restriction in the general borough act of 1851, nor is there any provision in the act of 1853 which in express terms, or by necessary implication, limits the right of stockholders, individual or municipal, to alienate their stock holdings. On the other hand, the right of stockholders to sell their stock is expressly recognized in sec. 5, and the method of making transfers thereof is therein provided. By this section it is made the duty of the board of managers to procure certificates of stock, to be signed by the president and treasurer with the corporate seal attached, and then delivered to each stockholder, who shall have the right to transfer the same at pleasure. There is not even a suggestion of a limitation upon the right to sell, but the express power so to do is conferred in the act creating the corporation. It is argued that this only applies to the shares held by individual stockholders, and not to those owned by the borough. But it is not so written in the law, and there is nothing within the four

corners of the act to warrant such a conclusion. Why should there be? Here was a private corporation about to engage in an enterprise for the emolument of its stockholders and the advantage of the borough and its inhabitants. It needed money to accomplish its corporate purpose. Evidently a sufficient amount could not be secured by private subscription, and the legislature authorized the borough to become a subscriber. It did so, and received a certificate for the shares of stock purchased. These shares are the private property of the borough, which it has the right to alienate when proper municipal authority so to do has been given, just as the individual shareholder may sell and transfer his stock. When a municipal corporation engages in things not public in their nature it acts as a private individual, and is as much bound by its engagements as a natural person : Western Saving Fund Society v. City of Philadelphia, 31 Pa. 185. If it acts as an individual in acquiring the stock, it may as an individual dispose of it. The right to acquire, there being no statutory restriction as to alienation, includes the incidental power of sale.

It thus appearing that there is no provision in the general borough act of 1851 or in the act of 1853, providing for the incorporation of the appellee company, denying the right to sell the stock for which the borough was authorized to subscribe, the only remaining question to be determined is whether by contract the appellant borough has denied itself this right. It is contended for appellee that section four of the ordinance of June 2, 1853, providing that the capital stock of the water company shall not exceed $75,000 so that the subscription of the borough shall amount to the one-third thereof in order that the borough shall not be deprived of its right to name three managers, was in the nature of a contract, which in legal effect must be held to mean that the borough thereby covenanted not to sell its stock, but to always hold the same for the purpose of securing its representation on the board of managers. The ordinance cannot by any reasonable construction be held to mean this thing. At most it was only a convenient and equitable arrangement, sanctioned by the legislature, for the purpose of securing sufficient representation on the board in order that the rights of the borough should be

properly protected. Again, in the section of the ordinance relied on to sustain the contention of appellee, it is expressly provided that nothing therein contained shall be so construed as to prevent the borough from making any modification or alteration which it may afterwards deem just and reasonable to make. The water company was therefore notified in the ordinance itself that the arrangement for representation was subject to modification and alteration by the borough. With what reason, therefore, can it be argued that this arrangement was to continuously and permanently restrict the right of the borough to modify or alter that relation when it is otherwise provided in the ordinance ? The legal effect of the ordinance was that so long as the borough held one-third of the capital stock it was to have the right to annually appoint three managers of the company. But this right only existed so long as the stock was held by the borough. If at any time the borough chose to exercise its undoubted right to sell its stock, it could no longer exercise the power of appointment, and the somewhat peculiar relation thus established would terminate. There were no provisions in the acts of assembly, nor in the ordinance, to prevent an alienation by the borough of its shares of stock : Terre Haute v. Terre Haute Water Works Co., 94 Ind. 305; Newark v. Elliott, 5 Ohio St. 113. The suggestion that the relation of the parties established by ordinance was one of partnership and that the stock of the borough must be held in perpetuity, cannot prevail, because if such a relation in contemplation of law did exist and the works and property of the appellee company were so held, the right of a partner to dispose of his interest in the partnership property cannot be questioned, subject, of course, to the rights, liabilities and equities of the partnership : Brown v. Beecher, 120 Pa. 590; Collner v. Greig, 137 Pa. 606. Nor is there any merit in the intimation that injustice may be done the appellee company or its stockholders if a severance of the relation existing with the borough is permitted, because it has been frequently held by this court that a borough was authorized to adopt one of two methods to supply itself with water, that is to say, it could construct and operate its own works by municipal taxation, or it could contract with a private corporation to construct works and supply water. It was also decided that both

methods could not be in operation at the same time, the selection of one being within the meaning of the law the rejection of the other method so long as the first continued the supply according to law : Wilson v. Rochester Borough, 180 Pa. 509 ; Welsh v. Beaver Falls Borough, 186 Pa. 578 ; Carlisle Gas and Water Co. v. Carlisle Water Co., 188 Pa. 51. Under the rule of these cases, the appellant borough having already exercised its power by entering into a contract with the appellee company for its water supply, it cannot adopt any other method, or contract with any other company so long as appellee continues to supply water according to law.

The opinion of the learned judge who heard the case in the court below is an able and exhaustive presentation of his view of the law, as applied to the facts of this case, but in our opinion a wrong conclusion was reached and cannot be sustained.

Decree reversed and injunction dissolved at the cost of the appellee.