## Boroughs Operating Electric Plants.

*Taxation — Corporations — Boroughs operating electric plants—Commercial operation—Acts of June 1, 1889, and May 14, 1915.*

1. A municipal corporation may act in a double capacity, in its capacity as a "public corporation created by the government for political purposes," and also in the capacity of a private corporation.

2. When a municipality, by virtue of legislative enactment, is given a grant of power for the purpose of private advantage or profit, even though the public may derive a benefit therefrom, such municipality is, as to such grant of power and as to such purposes, a private corporation, and subject to the liabilities of a private corporation.

3. Where a borough, by virtue of authority given to it by an act of the general assembly, owns and operates an electric light plant for commercial purposes, manufacturing electricity and supplying it to the public, and charging therefor, it is subject to the tax imposed by section 23 of the Act of June 1, 1889, P. L. 420.

4. Where a borough engages in such business, it is not performing a function of government "delegated by the State to its agencies as public instrumentalities;" but it is acting in its "corporate character, or business capacity."

Department of Justice.   Opinion to Hon. Samuel S. Lewis, Auditor General.

JOHN ROBERT JONES, Dep. Att'y-Gen., Oct. 23, 1924.—The issue raised by your letter of Aug. 27, 1924, and your supplementary letter of Sept. 11, 1924, is whether or not boroughs, which, by virtue of legislative authority granted to them by the general assembly, own and operate electric light plants for commercial purposes, are subject to the provisions of section 23 of the Act of June 1, 1889, P. L. 420, and to the tax imposed thereby.

The pertinent portions of section 23 of the Act of June 1, 1889, P. L. 420, read as follows: ". . . and every electric light company, . . . incorporated or unincorporated, doing business in this Commonwealth, shall pay to the State Treasurer a tax of eight mills upon the dollar upon the gross receipts of said corporation, company or association, limited partnership, firm or copartnership, received . . . from business of electric light companies; . . . the said tax shall be paid semi-annually upon the last days of January and July in each year; and for the purpose of ascertaining the amount of the same, it shall be the duty of the treasurer or other proper officer of the said company, firm, copartnership, limited partnership, joint-stock association or corporation, to transmit to the Auditor General a statement, under oath or affirmation, of the amount of gross receipts of the said companies, copartnerships, corporations, joint-stock associations or limited partnerships derived from all sources, and of gross receipts from business done wholly within the State, during the preceding six months ending on the first days of January and July in each year; and if any such company, firm, copartnership, joint-stock association, association or limited partnership or corporation, shall neglect or refuse, for a period of thirty days after such tax becomes due, to make said returns or to pay the same, the amount thereof, with an addition of ten per centum thereto, shall be collected for the use of the Commonwealth as other taxes are recoverable by law:  Provided, . . ."

The nature and character of the tax imposed by this section of the said act of assembly was considered in the case of Com. *v.* Brush E. L. Co., 204 Pa. 249.  In this case the Supreme Court said that the tax "is not to be paid upon the gross receipts from electric lighting, but upon the gross receipts from the business of the company; . . . it (the company) is taxed on what it does.  The statute imposes the tax, not upon a portion of its receipts—those derived from a particular commodity it supplies to the public—but upon all of its receipts from its general business conducted under its franchise."

That the term "corporation," as used in said section 23 of the Act of June 1, 1889, P. L. 420, includes private corporations, I take it, calls for neither argument nor citation of authority. The question instantly arises, Does the term include municipal corporations? In answering this question, the nature and character of municipal corporations must be considered, their functions as an agent of the sovereign State, and their powers and activities other than those of government.

A municipal corporation may act in a double capacity; in its capacity as a "public corporation created by the government for political purposes," and also in the capacity of a private corporation.

This principle of law has been affirmed and reaffirmed in numerous decisions of the Supreme and Superior Courts: See Western Savings Fund Society v. City of Philadelphia, 31 Pa. 175; Philadelphia v. Fox, 64 Pa. 169; Wheeler v. Philadelphia, 77 Pa. 338; Brumm's Appeal, 22 W. N. C. 137; White et al. v. City of Meadville, 177 Pa. 643; Baily v. Philadelphia, 184 Pa. 594; Jolly v. Monaca Borough, 216 Pa. 345; Gas and Water Co. v. Carlisle Borough, 218 Pa. 554; Penn Iron Co. v. Lancaster, 25 Pa. Superior Ct. 478; Bower v. United Gas Improvement Co., 37 Pa. Superior Ct. 113; Cousins v. Butler County, 73 Pa. Superior Ct. 86; Moore v. Luzerne County, 262 Pa. 216; Scibilia v. City of Philadelphia, 82 Pa. Superior Ct. 328, affirmed by the Supreme Court, 279 Pa. 549.

In the case of Philadelphia v. Fox, 64 Pa. 169, Justice Sharswood said, on pages 180 and 181: "The City of Philadelphia is beyond all question a municipal corporation; that is, a public corporation created by the government for political purposes, and having subordinate and local powers of legislation: 2 Kent's Comm., 275; an incorporation of persons, inhabitants of a particular place, or connected with a particular district, enabling them to conduct its local civil government: Glover Mun. Corp., 1. It is merely an agency instituted by the sovereign for the purpose of carrying out in detail the objects of government—essentially a revocable agency—having no vested right to any of its powers or franchises—the charter or act of erection being in no sense a contract with the State, and therefore, fully subject to the control of the legislature, who may enlarge or diminish its territorial extent or its functions, may change or modify its internal arrangement, or destroy its very existence, with the mere breath of arbitrary discretion. *Sic volo, sic jubeo*, that is all the sovereign authority need say. This much is undeniable, and has not been denied. That while it thus exists in subjection to the will of the sovereign, it enjoys the rights and is subject to the liabilities of any other corporation, public or private, is equally undoubted. This was the very object of making it a body politic, giving it a legal entity and name, a seal by which to act in solemn form, a capacity to contract and be contracted with, to sue and be sued, *a persona standi in judicio*, to hold and dispose of property, and thereby to acquire rights and incur responsibilities. These franchises were conferred upon it for the purpose of enabling it the better to effect the main design of its institution, the exercise of certain of the powers of government, subordinate to the legislature, over a certain part of the territory of the State. But all this affects its relations to other persons, natural or artificial; it does not touch its relation to the State, its creator. It is nothing to the purpose, then, to show that a city may act in certain particulars as a private corporation, may make contracts as such, and that it cannot impair the obligation of a contract entered into by it in that capacity, because it may deem it for the benefit of its citizens to do so, nor is it in the power of the legislature, under the provision of the Constitution, to authorize the viola-

tion of such a contract: Western Savings Fund Society *v.* City of Philadelphia, 31 Pa. 175, 185. . . .' "

In the case of Western Savings Fund Society *v.* City of Philadelphia, 31 Pa. 185, the Supreme Court said, on pages 189 and 190: "Nor can there be any doubt that the trust existing in the trustees is a private one, and that the City of Philadelphia is to be regarded as a private corporation, so far as relates to its contract with the loan-holders. It was not as a municipality that it dealt with them. As a local sovereign, it had no authority to enter into the business of manufacturing and selling gas, for its sovereignty did not extend to such subjects, any more than it did to almost any other manufacture. It is true, a municipal corporation is not bound by any engagement which prevents a discharge of the duties imposed upon it by its organic law, for the plain reason that such engagements are contrary to law. But when such a corporation engages in things not public in their nature, it acts as a private individual, no longer legislates, but contracts, and is as much bound by its engagements as is a natural person. The distinction between public duties and private business is wide and obvious. It is, perhaps, nowhere better stated than by Chief Justice Nelson in Bailey *v.* The Mayor, &c., of the City of New York, 3 Hill, 531. In speaking of powers granted to a municipal corporation, he remarks, that 'regard should be had not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for purposes of private advantage, or emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc,* is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom like special franchises had been conferred.' The contract, therefore, whatever it was, which was made with the loan-holders, complainants in this case, is as unchangeable as if it had been made with a natural person."

In the case of Moore *v.* Luzerne County, 262 Pa. 216, Mr. Justice Simpson, in speaking for the court, said: "Since Western Saving Fund Society of Philadelphia *v.* Philadelphia, 31 Pa. 185, we have steadily held to the principle that, in determining the distinction between the governmental and business functions of a public body, 'regard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But if the grant was for purposes of private advantage or emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc,* is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom like special franchises had been conferred.' . . ."

It is, therefore, to be regarded as settled law that when a municipality, by virtue of legislative enactment, is given a grant of power for purposes of private advantage or profit, even though the public may derive a benefit therefrom, such municipality is, as to such grant of power and as to such purposes, a private corporation and subject to the liabilities of a private corporation. The grant of such power to a borough or city is "a special private franchise, made as well for the private emolument and advantage of the city as for the public good." See Jolly *v.* Monaca Borough, 216 Pa. 345, and cases cited therein.

The difficulties in particular cases arise in the application of this principle

of law. The preliminary question in each case is, "Is the municipality acting in its public or governmental capacity or in its private and corporate capacity?" The test to determine the answer to this question was declared in the opinion of the Superior Court in the case of Scibilia v. City of Philadelphia, 82 Pa. Superior Ct. 328.

The court, in considering the "difference between things which a municipality may do by virtue of its powers of sovereignty and those things which it may do in the capacity of a corporation," stated the true test to determine in what capacity the municipality was acting in a particular case. On page 333 of the opinion we read: ". . . We think the true test is whether the duty is public and governmental or private and corporate. As characteristic examples of public or governmental functions we have the case of the policeman and fireman. Equally characteristic of private or corporate functions are the cases of municipal water supply or lighting plants furnishing conveniences to the inhabitants for compensation. . . ."

The judgment of the Superior Court was affirmed by the Supreme Court (279 Pa. 549). The Chief Justice rendered the opinion, saying, on page 553: "In deciding that, at the time of the accident, the City of Philadelphia was performing a purely public function, to which the rule of *respondeat superior* did not apply, the court whose judgment is now under review correctly stated that the true test went to the nature of the duty the municipality was then engaged in carrying out, the controlling question being, was it 'corporate and managerial, or public and governmental?' and this without regard to whether the duty was 'absolute,' 'imperative' or 'ministerial,' as distinguished from 'legislative,' 'judicial' or 'discretionary,' which is a test sometimes applied."

In the light of these decisions of our appellate courts, how stands the case of a borough which, by virtue of authorization given to it by an act of the general assembly, owns and operates an electric light plant for commercial purposes, manufacturing electricity and supplying it to the public and charging therefor?

In the opinion of the Superior Court in the case of Scibilia v. City of Philadelphia, 82 Pa. Superior Ct. 328, it was expressly stated that "municipal . . . lighting plants furnishing conveniences to the inhabitants for compensation" are "characteristic of private or corporate functions." This language can lead but to one conclusion, namely, that in the performance of this private or corporate function, the municipality is in contemplation of law a private corporation, and, in the language of the Supreme Court in Western Saving Fund Society of Philadelphia v. Philadelphia, 31 Pa. 185, and Moore v. Luzerne County, 262 Pa. 216, "stands on the same footing as would any individual or body of persons upon whom like special franchises had been conferred."

In the case of Gas and Water Co. v. Carlisle Borough, 218 Pa. 554, Justice Elkin said, on page 558: ". . . When a municipal corporation engages in things not public in their nature, it acts as a private individual, and is as much bound by its engagements as a natural person: Western Savings Fund Society of Philadelphia v. Philadelphia, 31 Pa. 185. If it acts as an individual in acquiring the stock, it may as an individual dispose of it. The right to acquire, there being no statutory restriction as to alienation, includes the incidental power of sale."

In the case of Bower v. United Gas Improvement Co., 37 Pa. Superior Ct. 113, 129, the court said: "It has been definitely settled that in thus undertaking to furnish to its citizens supplies of water and gas, the city was not discharging any municipal obligation or exercising any power which it pos-

sessed only because it was a municipality, but was acting in the capacity and exercising the powers of a private corporation: Western Saving Fund Society of Philadelphia v. Philadelphia, 31 Pa. 175; s. c., 31 Pa. 185; Wheeler v. Philadelphia, 77 Pa. 338; Baily et al. v. Philadelphia, 184 Pa. 594. In the case first cited Chief Justice Lewis said: 'But the contracts which a municipal corporation may make for the purpose of supplying the inhabitants with gas light in their streets and houses relate to the 'things of commerce,' as distinguished in the civil law from the 'things public,' which are regulated by the sovereign. Such contracts are not made by the municipal corporation by virtue of its powers of local sovereignty, but in its capacity of a private corporation. The supply of gas light is no more a duty of sovereignty than the supply of water.' "

In the case of Jolly v. Monaca Borough, 216 Pa. 345, Justice Potter, speaking for the court, said: "We think the court below overlooked the fact that a municipal corporation, in supplying water, or any other commodity, to its inhabitants individually, acts in a private, and not in a public, capacity, and the relation established with the individuals with whom it deals is purely one of contract."

In his opinion Justice Potter cited with approval and quoted from the opinion of Judge Pershing in Brumm's Appeal, 22 W. N. C. 137, wherein the latter held that when a municipal corporation supplies its inhabitants with gas or water, it does so "in its capacity of a private corporation, and not in the exercise of its powers of local sovereignty. If this power is granted to a borough or city, *it is a special private* franchise, made as well for the private emolument and advantage of the city as for the public."

In view of the foregoing, the effect of the passage of the Act of May 20, 1891, P. L. 90, which appears to have been the first authorization given to boroughs to engage in the business of manufacturing and supplying electricity to the public for commercial purposes, was to grant to boroughs which exercised the powers conferred by the act "a special private franchise" to engage in the electric light business, a franchise differing not at all from that which the State under the general incorporation statutes grants to private citizens.

The words in the act, "to manufacture electricity for commercial purposes," convey the meaning of a conduct of such business with the same motive of private emolument and advantage to the borough which moves private citizens for their private emolument and advantage to apply for a corporate franchise to engage in a similar business. The further provisions in the act enabling a borough to acquire the works of corporations already engaged in such business in the borough support this view. Clearly in the case where the borough, under the legislative power conferred, acquires the works of an existing corporation, it occupies the same relationship with reference to the service to be rendered to its inhabitants by it as the corporation it superseded.

What has been said with reference to the Act of 1891 applies, in my opinion, with equal force to the provisions of chapter 6, article XVII (b), of the General Borough Act of May 14, 1915, P. L. 312, chapter 13 of which act repealed the said Act of May 20, 1891, P. L. 90.

It is to be borne in mind that neither the said Act of May 20, 1891, P. L. 90, nor the General Borough Act of 1915, chap. 6, art. XVII (b), made it the duty of the borough to engage in such business. The acts are purely empowering acts. They did not make it the duty of the borough in its capacity as a local sovereign to engage in such business. The language of these acts does not lead to the conclusion that a borough which engages in such business is, as to

such business, performing a public duty in its capacity as a local sovereign. In other words, the borough, when it engages in such business, is not performing a function of government "delegated by the State to its agencies as public instrumentalities;" it is acting in its "corporate character or business capacity."

If, therefore, a borough, by virtue of a grant of power given to it by the general assembly, engages in the manufacture and supply of electricity to the public, which is to say, engages in such manufacture and supply for commercial purposes, I am of the opinion that it is, as to such exercise of corporate power, a private corporation.

Given (as a major premise) the proposition that all private electric light corporations which, in the exercise of their franchises, engage in the manufacture and supply of electricity to the public, that is to say, for commercial purposes, are subject to the provisions of section 23 of the Act of June 1, 1889, P. L. 420; and given (as a minor premise) the proposition that a borough which, by virtue of a legislative grant, engages in business for purposes of private advantage or emolument, as, for example, the manufacture and supply of electricity to the public, that is to say, for commercial purposes, is, as to such exercise of corporate power, a private corporation and subject to the liability of a private corporation.

The conclusion logically results that such borough is, as to such business so engaged in by it, subject to the provisions of said section 23 of the Act of June 1, 1889, P. L. 420.

I am, therefore, of the opinion that boroughs which, by virtue of legislative authority granted to them by the general assembly, own and operate electric light plants for commercial purposes are subject to the provisions of section 23 of the Act of June 1, 1889, P. L. 420, and to the tax imposed thereby.

From C. P. Addams, Harrisburg, Pa.