The Centre Hall Water Company, Appellant, *v.* The Borough of Centre Hall, Pennsylvania; Samuel Shoop, Chief Burgess; Clement F. Deininger, John Rider, William F. Bradford, Clement W. Luse, Jerry Miller, R. D. Foreman and M. L. Emerick, Council of said Borough.

*Corporations—Water companies—Exclusive privileges—Borough.*

A water company incorporated without exclusive privileges prior to the act of April 29, 1874, which has supplied water to the residents of a town prior and subsequent to its incorporation as a borough, but which has never had any contract with the borough, and has never by any action of the borough been induced to extend its pipes or expend money upon its plant, is not entitled to an injunction to restrain the borough from establishing and maintaining waterworks of its own. White v. Meadville, 177 Pa. 643, Metzger v. Beaver Falls, 178 Pa. 1, and Wilson v. Rochester, 180 Pa. 509, distinguished.

Argued April 19, 1898. Appeal, No. 387, Jan. T., 1898, by plaintiff, from decree of C. P. Centre Co., Nov. T., 1897, No. 151, dissolving preliminary injunction. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity by a water company for an injunction to restrain a borough and its corporate officers from erecting and operating rival waterworks.

The facts appear by the opinion of the court, LOVE, P. J., dissolving a preliminary injunction, which was as follows:

The complainant filed its bill in this case, averring that it was duly incorporated by Act of Assembly March 17, 1858, P. L. 1859, page 799, and under the provisions of the Act of March 11, 1857, P. L. 77; that the company was duly organized and built waterworks in the fall of 1858, and then commenced supplying the village of Centre Hall with water, and has continued to supply said town with a supply of pure water ever since; that the company accepted the provisions of the act of 1857, and the provisions of the new constitution of Pennsylvania, and

the provisions of the act of April 29, 1874, relative to the incorporation of gas and water companies and the several amendments and supplements thereto; that the village of Centre Hall was incorporated a borough September 18, 1885, under the provisions of the act of April 3, 1851, regulating boroughs of this commonwealth; that the borough of Centre Hall, by resolution passed March 1, 1897, declared its desire to increase the indebtedness of the borough to the amount of $5,000, in addition to the indebtedness already authorized for the purpose of erecting waterworks to supply the said borough with water; that in pursuance of said resolution, a special election was held April 6, 1897, submitting the question of increasing the indebtedness to a vote of the people, which resulted in seventy-seven votes for the increase, and six votes against the increase of the indebtedness; that complainant is informed and believes said election was null and void, because it was not advertised according to law, and because the ballots were not properly printed according to law; that said borough, August 14, 1897, passed an ordinance providing for the erection and equipment of a water plant, etc.; that in pursuance of said ordinance, bids were made and contracts entered into for furnishing supplies and constructing said waterworks, with R. D. Wood & Co., of Philadelphia, and H. P. Malone of Hollidaysburg, Pa.; that the complainant, by virtue of its charter of incorporation, and the acts of assembly under which it was organized and is governed, has vested in it the exclusive right and authority of furnishing water to the citizens of the town of Centre Hall, and to all persons adjacent thereto; and that complainant has expended the sum of $15,000 in the erection and equipment of its plant, and that the contractors are proceeding under their contract to erect the new waterworks for the borough of Centre Hall, and that the erection of the works will work irreparable damage to the plaintiff; and further avers that the complainant is ready and able, as it has been in the past, to furnish to its patrons an adequate supply of pure, wholesome water for every purpose, for all the inhabitants of said borough and vicinity.

Upon the presentation of this bill, accompanied with injunction affidavits and bond, we granted a preliminary injunction, and this hearing was upon a motion to continue said injunction.

The facts, about which there is no very serious dispute, no answer having been filed, developed at the hearing, were:

The Centre Hall Water Company was duly chartered by act of assembly passed March 17, 1858, in which were incorporated the provisions of the act of assembly passed March 11, 1857. The company was duly organized, and erected a plant in the fall of 1858, by laying wooden pipes, and was to some extent a temporary construction, but served the purpose of furnishing a supply of water to all who became patrons thereof, in the town of Centre Hall and vicinity, for a period of about seventeen years. The company then replaced the wooden pipe with iron pipe, the main pipe leading from the reservoir for some distance being a six inch pipe, and then it is reduced to a four inch main before it enters the limits of the town ; through part of the town it is a four inch pipe, and a portion of it is two and one half inches ; the branch mains are one and one half inch pipe. But for aught that appeared, the plant has not failed to furnish an ample supply of water to the extent it is used. There is no provision made for purposes of use in case of fire, there being no fire plugs. At one time the company had placed some fire plugs on the system of pipes, but they were all removed before the town was incorporated a borough. The town of Centre Hall was incorporated a borough September 18, 1885, under the provisions of the general borough law of April 3, 1851. The bill does not aver, nor does the testimony show, that the complainant had laid any pipes or extended its plant since the town was incorporated a borough ; or that the borough has ever taken any action of any kind as to the use of the streets by the water company, or entered into any contract of any kind with it, relative to a supply of water for public purposes, such as fire, etc. ; but so far as the facts are shown by the bill, and the evidence adduced on part of complainant to continue the injunction, the waterworks or plant is the same as when the borough was chartered in 1885.

The borough of Centre Hall, March 1, 1897, passed a resolution in favor of increasing its indebtedness for the purpose of erecting public waterworks, and submitted the question to a vote of the citizens, who very largely voted in favor of the proposition April 6, 1897. The evidence as to the election was so meager, and the averments in the bill are so indefinite and general, that we are unable to determine its legality or validity at this time. The council of the borough passed an ordinance

August 14, 1897, providing for the erection of waterworks to supply the borough with water and advertising for bids, and subsequently entered into contracts with R. D. Wood & Co., September 10, 1897, for the furnishing of supplies and material necessary for the new waterworks, and with H. P. Malone for laying pipes, etc., and constructing the works, exclusive of reservoirs. These two contracts provide for an expenditure of the sum of $6,211.22, being $1,211.22 in excess of the indebtedness authorized by the vote of the people on that question, at the election held April 6, 1897. The contractors have partially executed their contracts by delivering considerable of the pipes and material; but little work has been done by H. P. Malone toward laying the pipes. The testimony shows that he just started to dig the trenches when the preliminary injunction was issued.

The complainant did not file its acceptance of the provisions of the new constitution of Pennsylvania and the act of April 29, 1874, until September 2, 1897, which was some six months after the borough had instituted formal proceedings toward the erection of public waterworks by the borough. The erection of the new works will no doubt impair the value of the plant of the complainant. The chief contention of the complainant is that by virtue of its charter, and the erection and construction of its works, having furnished a supply of water to the inhabitants of the town of Centre Hall and vicinity, prior to the incorporation of the town as a borough and since, it has the exclusive right and authority to furnish a supply of water for said borough, and the borough has no right to erect waterworks that would compete with the works of the complainant, and thus impair their value. Is this so? The act of 1857, under which the plaintiff was chartered, does not confer upon or grant to the plaintiff the exclusive right, privilege or authority to furnish a supply of water to the town of Centre Hall and vicinity. The grant authorizes the construction of waterworks and the entering upon streets, alleys, etc., for the purpose thereof, and sections 9 and 10 of the act provide, that they shall do as little damage to the streets as possible, and be "subject to such regulations as the councils of said borough, town, city or district may adopt in regard to grades, or for the protection and convenience of public travel over the same." Did the acceptance of the pro-

visions of the constitution and the act of April 29, 1874, and its supplements and amendments, confer or grant the exclusive right? It is true that by the acceptance thereof the company became subject thereto, and also acquired the benefits thereof; but as the Act of June 2, 1887, P. L. 310, amending the act of April 29, 1874, has been held to repeal clause 3, section 34 of the act of April 29, 1874 (see Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568), we fail to see how the acceptance of the provisions of the act of 1874, by the complainant, September 2, 1897, conferred upon it a grant of the exclusive right or privilege to supply water to the borough of Centre Hall.

We are of the opinion that the complainant by virtue of its charter rights does not possess the exclusive right and authority to furnish a supply of water to Centre Hall borough. The bill does not aver that the citizens of the town of Centre Hall prior to its incorporation entered into any contractual relation with the Centre Hall Water Company relative to the erection of its plant, nor has anything been done by the borough in relation thereto since its incorporation. The bill does not aver that the complainant has extended its pipes since the formation of the borough in 1885; nor does the testimony offered at the hearing show that the company has done anything in relation to its plant with the consent of the borough, other than supply its patrons with water as it had been doing prior to the incorporation of the borough. Nor so far as the bill and evidence shows has the borough taken any action in relation to the complainant's furnishing water to the inhabitants of the town. Then can it be said, because the complainant has been furnishing water to the inhabitants of the town of Centre Hall, who saw proper to patronize the company, and was so doing when the borough was incorporated, that therefore they have the exclusive right to furnish the borough with a water supply, and without more, the borough has exercised its authority under its charter to furnish a water supply, and is therefore prohibited from erecting works that may impair the value of the plaintiff's property and franchises? We are not prepared to so hold. To do so, we can readily see how a municipality would be at the mercy of a water company. Where a water company has been very extravagant in the cost of constructing its plant, or where its

system might be very deficient in many particulars for public uses, such as proper fire protection, and the stock of the company largely owned by one or two individuals, and the income absorbed in liberal salaries, so that no dividends be declared, then to say the borough should be compelled to purchase such a plant at the cost of construction, with interest thereon, would in our opinion work a great injustice, especially where the borough had not exercised its rights to procure a water supply by or through such company. The size of the main pipe laid by plaintiff, as shown by the evidence, and one and one half inch pipe on the branches from the main, would seem to afford in our judgment a very limited fire protection. The complainant relies upon the recent decisions in the cases of White v. Meadville, 177 Pa. 643, Metzger v. The Borough of Beaver Falls, 178 Pa. 1, and Wilson v. Borough of Rochester, 180 Pa. 509. Upon a careful examination of said cases, we find the decisions were based upon the fact that the said municipal corporations had exercised their respective charter rights to furnish a water supply through the agency of the several water companies. They had been parties to the procuring of the establishment of the said water companies, and by their action encouraged the organization of the companies, and on the strength of which the companies spent large sums of money in constructing their plants, laying their pipes, etc. And the municipal corporations having thus exercised their authority once under their charters to furnish a supply of water, could not exercise it again in a different manner to the hurt or injury of the companies they were parties to. But this case raises, as above stated, a very different question, and would require us to take a step farther in advance of the principles decided in the above cases than we feel the law warrants. In relation to the legality of the election held to increase the indebtedness of the borough as before stated, the allegations in the bill are very indefinite, and the evidence taken in relation thereto is insufficient to enable us to determine that it was illegal, even if we could do so in this bill. But upon the argument, that question was not seriously pressed. The chief point urged was the exclusive right of the plaintiff to furnish a water supply for the borough of Centre Hall, and that the borough had no right to furnish a supply by the erection of new works; but if it desires to furnish a supply, and

control the water supply, it should purchase the property of the complainant in the method provided for in the charter of the company. Having determined that question adverse to the plaintiff, we do not think the injunction should be continued.

And now, October 26, 1897, this cause came on to be heard on motion to continue the preliminary injunction at this term, and was argued by counsel; and, thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz: That the preliminary injunction heretofore granted be dissolved, and is hereby dissolved.

*Error assigned* was decree of the court.

*A. O. Furst*, with him *C. P. Hewes*, for appellant.—The complainant had the exclusive right and authority by virtue of its charter to supply water to the inhabitants of the borough of Centre Hall: White v. Meadville, 177 Pa. 643; Brymer v. Butler Water Co., 172 Pa. 489; Com. v. Russell, 172 Pa. 506; Lehigh Water Co.'s Appeal, 102 Pa. 515; Metzger v. Beaver Falls Borough, 178 Pa. 1. We submit the borough had no authority since 1885 to erect waterworks in the borough of Centre Hall, at the expense of the taxpayers, while an ample source of pure water was supplied by appellant: Grand Rapid Electric Light & Power Co. v. Light & Fuel Gas Co., 33 Fed. Rep. 659; Barnes v. District of Columbia, 91 U. S. 540; Phila. & Trenton R. R., 6 Wh. 25.

The Centre Hall Water Company derives its right, not from the borough, but from the state: Chicago City Ry. v. People, 73 Ill. 541; Com. v. Erie & N. E. R. R., 27 Pa. 339; Brymer v. Butler Water Works, 172 Pa. 489; Com. v. Russell, 172 Pa. 506.

When a statute creates a right and provides a particular mode by which it may be vindicated, no other remedy than that afforded by the statute can be enforced: Moyer v. Kirby, 14 S. & R. 165; Turnpike v. Brown, 2 P. & W. 463; Turnpike v. Martin, 12 Pa. 362.

*Ellis L. Orvis*, with him *Wilbur F. Reeder* and *Calvin M. Bower*, for appellees.—The act of June 2, 1887, repealed the exclusive franchise provision so far as water companies are con-

cerned: Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568.

This Court has held that even when a private water company has an exclusive right, " the legislature intended that the right should be exclusive only as against other water companies," and not as against a municipality: Lehigh Water Co.'s App., 102 Pa. 527.

It seems to be a sufficient answer to the contention of the appellant that the municipality can become the owner of the waterworks only in the method pointed out by the act of 1857 or the act of 1874, to cite this Court the case of Lock Haven Bridge Company v. Clinton County, 157 Pa. 379, where it is held that a provision in the charter of a bridge company, by which the legislature reserves the right to purchase the bridge after the expiration of twenty years, by paying the company a sum of money which, together with the dividends declared, shall equal the costs of constructing said bridge and ten per centum per annum thereon, does not imply relinquishment by the legislature of any right by which the property of the company may be taken for public use.

PER CURIAM, May 9, 1898:

So far as the facts of this case are material to the questions presented by the assignments of error, they appear to be fully and accurately stated by the learned president of the common pleas and need not be recited here; and, as to the conclusions drawn from the facts thus established, we are all of opinion that the plaintiff company is not now and never was invested with any exclusive right or authority to furnish a supply of water to the defendant borough, either by virtue of its charter rights or in consequence of anything that has been done thereunder by the parties or either of them. We find nothing in the case that brings it within the controlling principles of White v. Meadville, 177 Pa. 643, Metzger v. Beaver Falls, 178 Pa. 1, or Wilson v. Rochester, 180 Pa. 509, on which plaintiff relies. In each of those cases the respective municipalities had exercised their charter right to furnish a supply of water through the agency of the several water companies with which they respectively had entered into contractual relations for that purpose. No such relation ever existed between the parties to this

contention, and hence defendant is not affected by the consequences that might have resulted therefrom.

The questions involved have been so fully and carefully considered and satisfactorily disposed of by the learned judge who presided at the hearing that further discussion is unnecessary. On his opinion the decree is affirmed and appeal dismissed at appellant's costs.