Lighton et al., Appellants, *v.* Abington Township et al.

346

Argued May 23, 1939; reargued October 5, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, LINN, STERN and BARNES, JJ.

*Aaron S. Swartz, Jr.,* for appellants.

*George F. Baer Appel,* with him *David E. Groshens* and *Townsend, Elliott & Munson,* for appellees.

*Mark E. Lefever, Frederick E. Smith* and *Conlen, LaBrum & Beechwood,* for intervener.

OPINION BY MR. JUSTICE LINN, November 27, 1939:

This appeal is from a decree dismissing a taxpayers' bill filed to enjoin the proposed construction of a sewerage system in part to be paid for by the proceeds of bonds of the township to be issued pursuant to the Act of May 7, 1937, P. L. 574, 53 PS section 19092-2445, and the Act of May 14, 1937, P. L. 630, 53 PS section 1030. Defendant township commissioners filed an answer under Equity Rule 48 setting forth a number of

objections to the bill. The parties stipulated for final hearing on the bill and answer.

The township now contains two sewers, a small one owned by the township and the sewerage system in operation in Glenside owned and operated by the Cheltenham and Abington Sewerage Company.[1] It is proposed to construct a sewerage system which shall incorporate in it the existing township sewer.

The last assessment of taxable property was $22,-930,011. The net debt, when the bill was filed, was $186,418.68, leaving power in the commissioners to increase the debt by $272,181.54 without a special election.

The project includes the construction of the sewage disposal plant at a cost of approximately $250,000.00, to be paid for by general township bonds. The rest of the proposed sewerage system requires the expenditure of $1,100,000.00, to be paid for by so-called non-debt revenue bonds. If the township can avail itself of the Act of May 7, 1937, P. L. 574, 53 PS section 19092-2445, in the manner proposed, $1,100,000 of bonds may be issued without the consent of the electors, but if not, the issue of those bonds would result in an increase of indebtedness over the 2% limit in the sum of $827,818.46.

There are now two methods of financing such improvements. As the proposed expenditure is within the 7% debt limit, it would seem to be possible to finance the project by the issue of general township bonds if the voters so determine. A second method is provided by the Act of May 20, 1937, P. L. 739, 53 PS section

---

[1] Owners of properties served by that system have asked and obtained leave to intervene, averring that the acquisition of the system by the township and subjecting the owners of properties connected with the existing system to the payment of the proposed rates deemed necessary to produce sufficient revenue to pay principal and interest on the bonds is, inter alia, in violation of the 14th amendment of the Federal Constitution and also of Article IX, section 7, of the Constitution of Pennsylvania.

2900h, amending the Act of June 28, 1935, P. L. 463, 53 PS section 2900f, authorizing the creation of Municipal Authorities for such purposes. For reasons with which the court is not concerned, defendant commissioners rejected both these methods and based their action on the statute referred to.

Plaintiffs, after averring the enactment of certain ordinances providing for the sewerage system and the issue of bonds in payment, averred that the Act relied on by the township as authority for its action was unconstitutional, inter alia, in conflict (1) with article III, section 20, of the constitution, in that it attempted to authorize the township to delegate to a private corporation (The Provident Trust Company of Philadelphia was selected by the defendants for the purpose) the power to interfere with a municipal improvement, to wit, the sewerage system; (2) with article IX, section 8, as attempting to authorize an increase of indebtedness in excess of 2% of the assessed valuation without the consent of the electors. Other objections were made which need not now be stated.

It is proposed to raise the $1,100,000 by bonds described (in the words of the statute) as "non-debt revenue bonds secured solely by a pledge, in whole or in part, of the annual rentals or charges for the use of such sewer, sewer system or sewage treatment works. Said bonds shall not pledge the credit, nor create any debt, nor be a charge against the general revenues, nor be a lien against any property of the township, but shall be a lien upon and payable solely from the annual rentals or charges for the use of said sewer, sewer system or sewage treatment works." The pledge was to be made effective by a trust of which the Provident Trust Company of Philadelphia was named trustee. Ordinance No. 424 provided in section 2 "Said bonds shall be secured by a Trust Indenture from Abington Township to Provident Trust Company of Philadelphia, Trustee, which is hereby appointed as Trustee under

said Trust Indenture, under the terms of which the annual rentals or charges for the use of such sewer system, imposed as aforesaid by Ordinance No. 425, are pledged for the payment of the principal thereof and interest and State tax thereon. Said bonds shall not pledge the credit, nor create any debt, nor be a charge against the general revenues, nor be a lien against any property of said Township, but shall be a lien upon and payable solely from the annual rentals or charges for the use of said sewer system."

The bond provided—"TOWNSHIP OF ABINGTON . . . hereby promises to pay, but only out of annual sewer rentals or charges, to the bearer, or if this bond be registered as hereinafter provided, to the registered owner hereof. . . ." It is also provided—"In case an event of default, as defined in the Indenture, shall occur, the principal of this bond may become or be declared due and payable, in the manner, with the effect and subject to the conditions provided in the said Indenture." The indenture, in articles III and IV, imposes active duties on the trustee during the construction of the sewer, the disposition of the construction fund, and subsequently. In article V "Township covenants that it will maintain a schedule of rates for annual sewer rentals or charges such that the amounts which may reasonably be collected therefrom shall be sufficient to provide funds for (a) the amount expended annually by the Township in the operation, maintenance, repair, alteration, inspection, depreciation or other expenses in relation to the sewer system, including the sewers and the sewerage treatment works; (b) such annual amount as may be necessary to provide for the principal, interest and taxes, if any, on the bonds issued hereunder and secured hereby; and (c) sufficient to establish a margin of safety of ten per centum (10%) of (a) and (b). A schedule of the rates, certified by the Secretary of the Board of Township Commissioners to be in effect, shall be on file with the Trustee at all times." The

township agrees that "it will duly and promptly collect all the sewer rentals or charges" and pay them to the trustee; that if in any year the rentals received have been insufficient to raise the sums specified, the township "shall immediately revise the schedule of rates of the annual sewer rentals or charges so that the amounts reasonably to be collected therefrom shall be sufficient to provide for the amounts required. . . ." "If the Township shall fail to revise its schedule of rates within twenty (20) days" the trustee, on the request of holders of not less than 10% of the principal amount of outstanding bonds, may apply to the court to compel the township to revise the rates. Article X deals with defaults and remedy and, inter alia, provides that in specified contingencies the "Trustee shall be entitled to take actual possession of the sewer system as for condition broken, and, in its discretion may, with or without force and with or without process of law, and before or after declaring the principal of said bonds immediately due, and without any action on the part of any bondholders, by its agents or attorneys enter upon, take and maintain possession of all or any part of said sewer system, together with all records, documents, books, papers, and accounts of the Township relating thereto, and may, as the attorney-in-fact or agent of the Township, or in its own name as Trustee, hold, manage and operate said sewer system and collect the sewer rentals or charges, and shall, after paying out of the revenue from said sewer system all expenses for management and operation of said sewer system, and the costs of such repairs, replacements, alterations, and useful additions as may seem to it proper and judicious, and all taxes, assessments or charges, or liens upon said sewer system or any part thereof, together with reasonable attorneys' fees, and after retaining reasonable compensation for all amounts collected as Trustee for its services in that behalf, and such further sums as may be

sufficient to reimburse and indemnify the Trustee against any liability, loss or damage on account of any matter or thing done in good faith in pursuance of the duties of the Trustee hereunder, and to pay any moneys advanced or paid out pursuant to this Indenture together with interest thereon at the rate of six per cent. (6 %) per annum, apply the residue, if any, to the payment of the principal of and interest on the bonds."

Section 3 provides "Upon the happening of any event of default specified in Section 1 of this Article and its continuance for the period, if any, specified in said Section, then and in every such case the Trustee, in its discretion, may, and upon the written request of the holders of twenty-five per cent. (25%) in principal amount of the bonds then outstanding, and upon receipt of indemnity to its satisfaction, shall in its own right

(a) By mandamus, or other suit, action or proceeding at law or in equity enforce all rights of the bondholders, including the right to require the Township to collect rates, rentals and other charges adequate to carry out any agreement as to the pledge of the revenues or receipts of the sewer system and to require the Township to carry out any other agreements with or for the benefit of the bondholders, and to perform its or their duties under the aforesaid Act;

(b) Bring suit upon the bonds;

(c) By action or suit in equity require the Township to account as if it were the trustee of an express trust for the bondholders;

(d) By action or suit in equity enjoin any acts or things which may be unlawful or in violation of the rights of the bondholders."

The indenture contains a number of other provisions imposing conditions on the free action of the township and vesting powers in the trustee.

Plaintiffs contend that the vesting of such powers in a private corporation is in conflict with article III,

section 20,[2] of the constitution, which provides "The General Assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever." Plaintiffs' position is that the Act of 1937, as proposed to be applied by the defendants, is a delegation to the township of the power to delegate to a trustee the control and management of the sewerage system in the circumstances described. The municipal improvement or property which plaintiffs aver to be involved is the sewerage system now owned by the township and that now proposed to be added to it. As the legislature itself, with its great powers over municipalities, is prohibited from making such a delegation to a private corporation, the question is, may it authorize a municipality to do what the legislature itself is prohibited from doing. In *Commonwealth v. Moir*, 199 Pa. 534, at p. 541, 49 A. 351, MITCHELL, J., said: "Municipal corporations are agents of the state, invested with certain subordinate governmental functions for reasons of convenience and public policy. They are created, governed, and the extent of their powers determined by the legislature, and subject to change, repeal, or total abolition at its will. They have no vested rights in their offices, their charters, their corporate powers, or even their corporate existence. This is the universal rule of constitutional law, and in no state has it been

---

[2] The origin of this constitutional provision is familiar, and while the mischief that raised the subject for discussion in the convention was prior experience with appointed commissions exercising the power of taxation without supervision by the municipality whose inhabitants had to pay the tax (see *Tranter v. Allegheny County Authority*, 316 Pa. 65, 78, 173 A. 289; *Wilson v. School District*, 328 Pa. 225, 241, 195 A. 90) the result of the discussion in the convention was that a prohibition more comprehensive in its scope was adopted.

more clearly expressed and more uniformly applied than in Pennsylvania." See also *Shirk v. Lancaster*, 313 Pa. 158, 162, 169 A. 557.

We think the township, as the governmental agent of the state, is subject to the same prohibition to which the state is subject. Counsel for defendants contend that the challenged statute "does not delegate to a private corporation any power" but that "It does authorize a municipality voluntarily to enter into an agreement with a private corporation, such as a bank or trust company, representing, as a trustee, the bondholders." As the constitution specifically deprives the state of power to delegate the management of the municipal property to a private corporation, certainly the agent, the township, cannot make such a delegation; the effect of the limitation on the principal would be destroyed if the agent could do what was prohibited. Compare *Hammett v. Phila.*, 65 Pa. 146; *Lovell v. Griffin*, 303 U. S. 444; *Hague v. Committee for Industrial Organization*, 307 U. S. 496; *City of Louisville v. Weikel*, 137 Ky. 784, 127 S. W. 147 (1910). The authority cases relied on (among them, *Tranter v. Allegheny County Authority*, 316 Pa. 65, 173 A. 289; *Kelley v. Earle*, 325 Pa. 337, 190 A. 140; *Williams v. Samuel*, 332 Pa. 265, 2 A. (2d) 834) not only do not support the contention of defendants but are against them. In the Tranter case, for example, the county made no agreement with a private corporation; the Commonwealth dealt with its own property, the custody and management of which it had delegated to the county. It could at any time withdraw it from the county or it could add to the county's burdens in respect to it. The State authorized the creation of a public corporation, the Allegheny County Authority, and required its agent, the county, upon the creation of the Authority, to transfer to the Authority certain property for purposes which were within the jurisdiction of the state. On the same theory the incorporation of Municipal Authorities

has been supported. They are public corporations, being corporate agencies engaged in the administration of civil government.[3] The state may modify the part performed by its agencies in government by creating other agencies, subject always to constitutional limitations. If there is any resemblance between (1) the exercise of the power of the state to modify township government by taking part of it from the township and vesting it in a public corporation and (2) by statute, authorizing the municipality to make a contract with a private corporation to take over and operate public property, the fact remains that the state may do the first but is expressly prohibited from doing the second.

Reference is made in the brief to the fact that in some of the Authority cases the trust indenture made by the Authority contained provisions authorizing a trustee to enter, and, with reference to those provisions, it is said there is no difference between their exercise and the power proposed to be vested in the Provident Trust Company in the record before us. We think there is a great difference; in the Authority cases, the title to the property is in the Authority which makes the contract with the trustee; in case of default the trustee enters under the Authority; but if the defendant township defaults the private corporation is authorized to take over a part of the municipal property and operate it, which is clearly in violation of the constitutional provision.

One other point may be noticed. It has been suggested that, while the conclusion reached would be correct if the operation of the sewerage system were a governmental instead of a proprietary activity, Article III, section 20, does not apply because a proprietary function is under consideration. But the constitution makes no such distinction; the words are plain and must be given their common or popular meaning, for in that sense, the

---

[3] 1 Dillon, Municipal Corporations, 5th ed., pp. 62, 142.

voters are assumed to have understood them when they adopted the constitution: *Busser v. Snyder*, 282 Pa. 440, 449, 128 A. 80. The section prohibits delegating to any private corporation "any power to make, supervise or interfere with any municipal improvement, money, property or effects whether held in trust or otherwise or to levy taxes or perform any municipal function whatever." There are no words, on the one hand, restricting the prohibition to property etc., used for purely governmental purposes and, on the other, allowing the delegation for property etc., employed in proprietary capacities. Both classes of municipal activity were familiar when the constitution was adopted. The sewerage system is a municipal improvement; it is property belonging to the municipality; in whatever capacity used, whether governmental or proprietary, the words of section 20 expressly include it; we must give them effect.

As what is proposed to be done by the township is in violation of section 20 of Article III of the constitution, it is unnecessary to consider the other objections made by plaintiffs.

The decree is reversed, the bill is reinstated and the record is remitted with instructions to grant the injunction; costs to be paid by defendants.

DISSENTING OPINION BY MR. JUSTICE MAXEY:

When this case was argued in this court, appellants stressed chiefly the proposition that the non-debt revenue bonds constituted a "debt" within the meaning of sections 8 and 10 of Article IX of the Pennsylvania Constitution and since the proposed debt (if such it is) would increase the township debt to an amount which made it necessary first to obtain the consent of the electors, the statute and ordinance creating the "debt" are unconstitutional. Nineteen pages of appellants' paper book are devoted to that proposition and only one and a half pages to the proposition that the Act

of May 7, 1937, P. L. 574, contravenes section 20 of Article III of the Constitution.

It is clear to me that under the trust agreement and the Act of May 7, 1937, P. L. 574, and ordinance #424 providing against the bonds being a debt of the township or municipality, these non-debt revenue bonds do not constitute a debt of the *township* of *Abington*. In *Tranter v. Allegheny County Authority et al.*, 316 Pa. 65, 84, 173 A. 289, this court said: "We cannot consider the obligation as the debt of the county, unless it is a debt which the county has agreed to pay or can be required to pay. . . . The denial of power to incur liability on the credit of the county or of any municipality is notice to the prospective purchasers of the bonds that their security and their only source of payment will be in the revenues derived from users of the improved highway facilities: see *Moore v. City of Nampa*, 276 U. S. 536. The bondholders cannot call upon the public treasuries to contribute; no county or municipal property can be taken for the debt, because the bondholders have agreed to look to a special fund for payment to be raised in the manner provided."[1]

The majority opinion finds that "what is proposed to be done by the township is in violation of section 20 of Article III of the Constitution," and for that reason alone it holds that what the township proposes to do in respect to the sewer system cannot constitutionally be done. It says: "If the defendant township defaults, the private corporation is authorized to take over a part of the municipal property and operate it, which is clearly a violation of the constitutional provision [sec. 20,

---

[1] In *Oppenheim v. City of Florence*, 155 So. 859, the Supreme Court of Alabama held that bonds for a city's acquiring an electric distribution system, where the city did not obligate itself to pay any sum in liquidation of them except sums derived from the operation of the proposed system, did not constitute a "debt" within the constitutional provision limiting indebtedness. A municipality's debt is "a charge against its general credit."

Article III]." It adds: "It is unnecessary to consider the other objections made by plaintiffs."

With the conclusion of the majority I cannot agree. If the operation of a sewer system was a *governmental* function, its ownership and operation could not, under any circumstances, be intrusted to a private corporation, but the ownership and operation of a sewer system is *not* a governmental function; it is a proprietary function. "Sewers are owned by municipalities in their proprietary capacity, not governmentally": *Gemmill v. Calder*, 332 Pa. 281, 3 A. 2d 7. The construction, operation, or maintenance of sewer systems, water systems and gas systems by a municipal corporation is in the nature of a private enterprise. A municipality is not required to construct, own, or operate such public utilities. It may contract with private corporations or individuals to furnish such service, or it may, if it so elects, own and operate such utilities for the benefit and convenience of its inhabitants and property owners. See 46 A. L. R. p. 677. The difference between proprietary and governmental functions of a municipality is clearly set forth in *Western Saving Fund Society v. Phila.*, 31 Pa. 175, 183, as follows: "The contracts which a municipal corporation may make for the purpose of supplying the inhabitants with gas-light in their streets and houses, relate to the 'things of commerce,' as distinguished in the civil law from the 'things public,' which are regulated by the sovereign. Such contracts are not made by the municipal corporation, by virtue of its powers of local sovereignty, but in its capacity of a private corporation. The supply of gas-light is no more a duty of sovereignty than the supply of water. Both these objects may be accomplished through the agency of individuals or private corporations, and in very many instances they are accomplished by those means. If this power is granted to a borough or a city, it is a special private franchise, made as well for the private emolument and advantage of the city as for the public good.

The whole investment is the private property of the city, as much so as the lands and houses belonging to it. . . . It stands on the same footing as would any individual or body of persons, upon whom the like special franchises had been conferred." In *Bell v. Pittsburgh,* 297 Pa. 185, 189, 146 A. 567, in an opinion by the present Chief Justice, this court said: "Where a municipal corporation engages in an activity of business, rather than one of a governmental nature, such as the supply of light and water, which is generally carried on by individuals or corporations, it acts as a private corporation, and not in its sovereign capacity." In *Moore v. Luzerne County,* 262 Pa. 216, 105 A. 94, this court, in an opinion by Justice SIMPSON, reiterated the principle that if the grant is "for purposes of private advantage or emolument, though the public may derive a common benefit therefrom, the corporation, quod hoc, is to be regarded as a private company" and "stands on the same footing as would any individual or body of persons."[2] In *Shirk v. Lancaster City,* 313 Pa. 158, 164, 169 A. 557, this court pointed out that "public moneys raised through such functions (taxes) are subject to the primary powers of the state . . ., revenues derived in its private capacity, as a return from its water or other utility works, are trust funds and cannot be controlled or taken directly for state purposes." 43 C. J. p. 183, sec. 179, states: "When properly applied, the term 'governmental functions' should be limited to legal duties imposed by the state upon its creature, which it may not omit with impunity but must perform at its peril."

In *Gas & Water Co. v. Carlisle,* 218 Pa. 554, 557, 67 A. 844, this court said: "It is a familiar law that a borough, or other municipal corporation, has the incidental or implied right to alienate or dispose of its property, real or personal, of a private nature, held for

---

[2] See also *Memphis Power & Light Co. v. City of Memphis,* 112 S. W. (2d) 817; and *Travelers' Ins. Co. v. Wadsworth,* 109 Ohio St. 440, 142 N. E. 900.

the emolument and advantage of the municipality, unless restricted by charter or statute." There are numerous statutory recognitions of the fact that municipalities in respect to their sewer systems function as private corporations. For example, the First Class Township Law of June 24, 1931, P. L. 1206, sec. 2420 (which applies to Abington Township), provides that a township can contract for a sewer system with an individual or corporation and that the latter shall "exercise all the powers of the township in the construction and maintenance and operation of such system of sewage," including the right to collect "charges." It also provides (sec. 2440) for the acquisition of such a system from private owners and for entering into agreements with other townships for the building of sewers. The Act of May 4, 1927, P. L. 519, provides (sec. 2131) that sewer lines may be extended beyond municipal limits. This is cited to show that when a municipality acts in a proprietary capacity, it may act beyond its official boundaries. In its governmental capacity, it cannot, of course, do so.

In *Gas & Water Co. v. Downingtown Borough,* 175 Pa. 341, 34 A. 799, it was held that the legislature has the power to take away the right of a borough to construct water works and it may exercise this power by creating a corporation and conferring upon the latter the power which previously had been conferred upon the borough. This court said: "Its [the legislature's] power over the subject-matter was absolute, and it exercised it by creating a corporation and conferring upon it the power which it had previously conferred upon the borough. It thus created a new agency and conferred upon it privileges which were in terms exclusive of all other agencies. The water company accepted the grant of power which the borough had failed to execute, together with its privileges, and made expenditures and completed the works. The exclusive privilege was the inducement for the expenditure of money in the con-

struction and operation of the works. . . . The state, dealing with its own agencies, over which it had sovereign control, and conferring upon one of them an unexecuted power which had been possessed by the other, granted to the water company the exclusive authority to supply water to the borough and its vicinity and to such persons residing therein as might desire the same."

If the legislature could do this in the case just cited without violating the Constitution, it follows that the legislature could constitutionally pass the Act of May 7, 1937, P. L. 574, empowering "any township" to issue "non-debt revenue bonds secured solely by a pledge, in whole or in part, of the annual rentals or charges for the use of such sewer, sewer system or sewage treatment works" and empowering the trustee representing the bondholders to proceed in case of default in payment of the bonds, by mandamus or otherwise in the proper court to protect the rights of the bondholders and conferring upon the trustee the "right to the appointment of a receiver who may enter and take possession of the sewer system or sewage treatment works, or any part or parts thereof, the revenues or receipts from which are or may be applicable to the payment of the bonds so in default, and operate and maintain the same and collect and receive all rentals and other revenues thereafter arising therefrom in the same manner as the township, and shall deposit all such moneys in a separate account, and apply the same in such manner as the court shall direct. . . . All costs and disbursements allowed by the court shall be a first charge on any revenues and receipts derived from the sewer system or sewage treatment works, the revenues or receipts from which are or may be applicable to the payment of the bonds so in default."

I cannot find that the act of the legislature breaches in the slightest degree section 20 of Article III of the Constitution.

What was intended to be prohibited by Article III, section 20, of the Constitution has heretofore been well settled. In *Wilson v. Philadelphia School Dist.,* 328 Pa. 225, 240, 195 A. 90, this court, speaking through the present Chief Justice, said, in reference to Article III, section 20: "This section prohibits the delegation to any special commission of the legislature's power to tax. The purpose of the provision was to protect against the exercise of the taxing power by officials not subject to the control of the people." In *Tranter v. Allegheny County Authority,* 316 Pa. 65, 78, 173 A. 289, Mr. Justice LINN, speaking for this court and in discussing the same section of the Constitution, said: "By 1873, when the convention was engaged in preparing the constitution, public opinion had recognized the economic mistake of taking from municipalities certain powers and conferring them on independent commissions, while, at the same time, requiring the municipality to pay the bills incurred by the commission without any restraining voice in the expenditure. The separation of the power to incur debts from the duty of providing for their payment by taxation, produced the principal mischief complained of and which it was sought to prevent. Notorious examples were the Public Buildings Commission, created to build the city hall in Philadelphia, . . .; and the Penn Avenue Commissioners, operating in the City of Pittsburgh. . . . The subject was considered by the convention with particular reference to the experience of these two cities, and that experience illustrates the character of legislative interference with local government that was intended to be prevented." In *Junge's Appeal (No. 2),* 89 Pa. Superior Ct. 548, 564, Judge KELLER said: "The purpose of [section 20, Article III, of the Constitution] was to prohibit the legislature, either directly or indirectly, from taking away municipal powers from the municipal authorities and conferring them on outside bodies, as had been done by the General Assembly from time to time prior to the

adoption of the Constitution of 1873, notably when the legislature in 1870 created and appointed the Public Buildings Commission of Philadelphia." (Judge KEL-LER'S opinion in that case was approved by this court in *Ward's Appeal,* 289 Pa. 458, 465, 137 A. 630.) In this *Junge's Appeal (No. 2),* the Superior Court decided that the Act of May 1, 1923, P. L. 122, which provided for the appointment of a Board of Appeals to review decisions of the officer charged with the enforcement of zoning ordinances, did not violate Article III, section 20, of the Constitution. In his opinion in that case Judge KELLER said, after reviewing other decisions: "This is the construction put on Article III, section 20, which has resulted in legislation authorizing the municipalities of the Commonwealth to use boards and commissions to assist in performing many of the details of municipal government. Under these acts authority has been given cities, boroughs, etc., to appoint Boards of Health; Civil Service Commissions; Boards of Appeals in Building Inspection and Examining Commissions; Boards of Revision of Assessments; Sinking Fund Commissions, and many similar agencies." He adds: "The construction of this section of the constitution accepted in practice for many years should be adhered to unless clearly in opposition to the constitutional provision. We do not think it is so opposed." In *Kotch v. Middle Coal Field Poor Dist.,* 329 Pa. 390, 197 A. 334, we held that this section of the Constitution manifests an intention to prevent separation of power to incur debts from duty of providing for their payment by taxation, and to protect against exercise of taxing power by officials not subject to people's control. In *McKeown's Petition,* 51 Pa. Superior Ct. 277, it was held that the Act of May 24, 1901, P. L. 297, authorizing township commissioners of townships of the first class to enter into a contract with taxpayers to make or repair roads, was not contrary to Article III, section 20, of the Constitution, and that this was true even

though the taxpayer, under the contract in question, was acting at the instance of one or more corporations who have indemnified him against loss in execution of contract.

In *Byington v. Sacramento Valley West Side Canal Co.*, 148 Pac. 791, the Supreme Court of California held that a statute permitting the board of directors of an irrigation district to lease the system of canals and works was not unconstitutional as being in conflict with Article XI, section 13, of the California Constitution *since it does not purport to delegate to any private corporation any municipal function.* (Italics supplied.) The Supreme Court of California said: "The delivery of water dedicated to public use is not necessarily a municipal function. Such use may be administered by a natural person, or by a private corporation."

In *Tranter v. Allegheny County Authority* (supra), it was held that the Allegheny County Authority Act did not contravene Article 3, section 20, of the Constitution for two reasons: (1) The Authority was not a special commission, private corporation or association, and (2) "the statute authorizes no supervision or interference with municipal improvements, money, property or effects in the sense contemplated by the Constitution. Allegheny County Authority, as the agent created for the purpose by the state, deals not with property owned by the municipality, but with the highway system of the Commonwealth as to which, as we have repeatedly held, the power of the state is supreme, and this makes it immaterial that the trustee, under the trust indenture, The Colonial Trust Company of Pittsburgh, may enter upon the premises for the purpose of collecting tolls or otherwise in the event of default by the Authority. Cf. *Blood v. McCarty*, 112 Cal. 561, 44 Pac. 1025. Section 501, supra, provides that the defendant cannot pledge the credit of the Commonwealth or of any county, city, borough, township or any other municipality, or create any debt of the county or other

municipality, and that its bonds and debts are a lien upon and payable solely from the assets and revenues of the Authority. It can levy no taxes."

It is clear to me in the instant case, as in the Tranter case, that the statute authorizes "no supervision or interference with municipal improvements, money, property or effects in the sense contemplated by the Constitution." The prohibition of section 20 of Article III of the Constitution has *nothing to do with the property a municipality or township holds in its proprietary capacity.* Of course, a legislature could not delegate to a special commission or private corporation or association any power to interfere with any municipal improvement, money, property or effects which the municipality or township was using in its *governmental* capacity. No special commission or private corporation could, for example, be authorized to take over the management and control of a municipal jail or municipal firehouses or the public money (except as an official depository), but a private corporation *can* take over the management and control of a water system or sewer system, for the ownership and management of such systems are *not governmental* functions. The Corporation Act of 1874, P. L. 73, provides that corporations for profit may be chartered for the purpose of "construction and maintenance of sewers," etc., "for the health, comfort and convenience of inhabitants . . ." In the Tranter Case, it is provided by the terms of the contract that "after the cost of all of the public works and improvements to be constructed by defendant Authority shall have been duly paid out of the revenues received by defendant Authority from the same, then all of the property of said City conveyed to defendant Authority will revert to and become the property of the County of Allegheny improved by the public works and improvements constructed thereon by defendant Authority, without cost either to the said City or to the County of Allegheny." In the instant case, the trust indenture

provides that "the township may, at its option, on April 1, 1959, or on any interest date thereafter redeem prior to the maturity thereof, any or all of the bonds of Series A[3] outstanding, upon payment of the principal amount thereof together with accrued interest." The trust agreement further provides that after default and the trustee or receiver takes possession of the sewer system and operates and maintains and controls the rentals, the revenues shall be applied as follows: after the payment of costs and disbursements allowed by the court, counsel fees, expenses of the trustee, costs of operation, maintenance, repair, alteration, etc., then to the payment of the whole amount of principal and interest and taxes, if any, which shall then be owing or unpaid upon the bonds, and if there is any surplus, it shall be paid "to the township, or to whomever may be lawfully entitled to receive the same." In the instant case, as in the Tranter case, the basic idea is that the revenues from the improvement shall be used for the payment of the improvement and that if the cost of the improvement has been liquidated from the revenues, the property will revert, in the Tranter case to the County of Allegheny and in the instant case to the Township of Abington. Even if there was no such provision in the instant case, that is, if the sewer system was to be constructed by a private corporation and permanently owned and managed by such a corporation, there would be no violation of Article III, section 20, of the Constitution. For private corporations or associations to administer governmental functions would lead to chaos, but to hold that the proprietary functions of municipalities cannot be administered by individuals or private corporations would paralyze municipal progress. What Justice MITCHELL said in his able dissenting opinion in *Perkins v. Philadelphia,* 156 Pa. 554, 27 A. 356 (in which case Article III, section 20, of the Constitution was discussed) may be appropriately quoted here:

---

[3] These are bonds for the construction of the sewer system.

"A literal adherence to all its [Article III of the Constitution] provisions would have stopped the wheels of government, and so this court was forced to hold when the first great question of the needs of municipal legislation came before it. Some elasticity was absolutely indispensable, and it was found in the principle of classification. I make these observations and this illustration to call special attention to the necessity of reading the Constitution, where it relates to the powers of the legislative branch of the government, in a broad and liberal way, looking to its spirit as more controlling than its mere words. If a statute does not offend against the spirit, does not really do the thing which the constitution means to prohibit, then it should be sustained, although its form may be liable to objection under the strict words of the prohibition."

Holding as I do that the prohibitions of Article III, section 20, of the Constitution do not relate to property dealt with by municipalities and townships *in their proprietary capacities*, I am convinced that the constitutionality of the Acts of May 7, 1937, P. L. 574, and of May 14, 1937, P. L. 630, is free from doubt. As to *such* property, municipalities and townships "stand on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred": per Chief Justice NELSON[4] of the Supreme Court of New York (1843), in *Bailey v. New York City,* 3 Hill 531, 539, citing *Dartmouth College v. Woodward,* 4 Wheat. 668, 672; 2 Kent's Com. 275, 4th ed.; *U. S. Bank v. Planters' Bank,* 9 Wheat. 907; 1 Brown's Ch. R. 469. Even if there was some slight doubt in my mind about the constitutionality of these acts that would not justify me in judging them unconstitutional. As Mr. Justice LINN, speaking for this court in the Tranter case, supra, said (quoting from *Sharpless v. Mayor of Philadelphia,* 21 Pa. 147, 164) : "We can declare an Act of Assembly void, only when it violates the consti-

---

[4] Justice of the Supreme Court of the United States, 1845-1872.

tution *clearly, palpably, plainly;* and in such manner as to leave *no doubt* or hesitation in our minds."

What the present Chief Justice said in *Kelley v. Earle et al.* (2nd case), 325 Pa. 337, at page 344, is apposite here: "To enforce a harsh, literal interpretation of the Constitution when considering the legality of the leases of the projects herein mentioned, which are essential to the life of the State and the comfort, health or security of its people, a construction opposed to all business concepts, would violate all rules of interpretation and cause loss of the respect necessary to the life of that document." The language just quoted is in harmony with what Justice STORY said in 1 Story, Constitution, sections 451, 454 and 455: "They [constitutions] are instruments of a practical nature, founded on the common business of human life, adapted to common wants, designed for common use, and fitted for common understandings." He deprecates that method of constitutional interpretation which "weighs only the force of single words, as philosophers or critics, and not whole clauses and objects, as statesmen and practical reasoners. . . . We should never forget," said he, "that it [the constitution] is an instrument of government we are to construe; and . . . that must be the truest exposition which best harmonizes with its design, its objects, and its general structure."

That the restriction of Article III, section 20, as to *property,* embraces only property used for governmental purposes is, I think, recognized by a long line of decisions of this court. For example in *Baily v. Phila.*, 184 Pa. 594, 39 A. 494, this court, speaking through Justice MITCHELL, said: "The gas works are the property of the City of Philadelphia, not as a municipality but as a business corporation. . . . In the performance of that function [supplying light], the city acts under authority merely and not under municipal obligation. . . . Hence, the city may change its mode of action. . . . It is urged that the city . . . cannot abdicate the func-

tion [of lighting]. . . . This brings us back to the preliminary question on which the whole case rests, whether supplying . . . gas for lighting purposes is a strictly municipal function, or merely a power conferred on the city as a corporation. If the former, it is a duty as well as a power, and cannot be abandoned; if the latter, it is an authority only and may be exercised or not at the city's option." This court there held that Philadelphia had the right to lease its gas works to a private corporation for thirty years. If a city's leasing of its gas works to a private corporation does not offend Article III, section 20, of the Constitution, I cannot understand how a township's providing by due enactments that in a certain contingency of default, the bondholders who furnished the money with which to build a sewer system can, through a trustee or receiver take charge of that system and have the rentals applied to the liquidation of those bonds, offends Article III, section 20, of the Constitution. Providing a lighting system and providing a sewer system are equally functions of a municipality in its *proprietary capacity* and a municipality can deal with the property it holds in that capacity exactly as the township of Abington has dealt with it in the instant case. Article III, section 20, of the Constitution has nothing whatever to do with property held by municipalities and townships in their proprietary capacity, and sewer systems, as this court has said at least three times in recent years "are owned by municipalities in their proprietary capacity."

The improved sewer facilities for whose construction the contracts in question were entered into are essential to the comfort and health of the people to be served. The latter are to obtain this service without having a single dollar added to the indebtedness of their township, without subjecting the township's property to the hazard of alienation, and without having the township's taxing power in any degree impaired.

I would affirm the decree of the court below.