## Wood v. City of New Castle et al.

*Frank O. Moretti*, for plaintiff.

*Robert W. White*, city solicitor, and *Robert Jamison*, assistant city solicitor, for defendants.

BRAHAM, P. J., December 9, 1953.—This case presents a problem in statutory interpretation. To be construed is the section of the Third Class City Code which relates to the employment of city firemen, their hours of work, and in particular their vacations. The sentence about which the controversy turns is as follows:

"The employes of such fire forces shall be allowed to have at least twenty-four consecutive hours of rest in every calendar week, to have an annual vacation of not less than fourteen working days, and shall be entitled to fourteen days sick leave without diminution of the salary or compensation fixed by ordinance".

What is the meaning of working days? According to the fireman's contention the vacation period of 14 days does not include any "off days" or rest days but continues until enough "working days" have been reached to aggregate 14. The city contends 14 successive days are meant, since every day is a working day for some of the firemen.

The facts of the matter have been determined by a stipulation which because of its brevity may be here included in full:

"1. Paid firemen in the City of New Castle work on a two-platoon system. All of the paid firemen are divided into three groups and ordinarily the personnel on each group remains constant. The schedule or system contemplates that two groups shall be working in each 24 hours; one group, denoted the daylight group, working 10 hours and the other, denoted the night group, working 14 hours. During each 24-hour period there is one group that does no work at all.

"2. Under the present quota each group contains 17 men. Each paid fireman is assigned permanently to a certain group and the time when a man works depends on the assignment of his group and not on his personal or individual assignment. The system used by the New Castle Fire Department Administration is illustrated by the following example in which each of the three groups of firemen is given a number. In the fortnight May 24, 1953, to June 7, 1953, inclusive, the several groups worked as follows, to wit:

|  | Group 1 | Group 2 | Group 3 |
| --- | --- | --- | --- |
| Sunday, May 24, 1953 | off | night | day |
| Monday, May 25, 1953 | night | off | day |
| Tuesday, May 26, 1953 | night | off | day |
| Wednesday, May 27, 1953 | night | day | off |
| Thursday, May 28, 1593 | night | day | off |
| Friday, May 29, 1953 | off | day | night |
| Saturday, May 30, 1953 | off | day | night |
| Sunday, May 31, 1953 | day | off | night |
| Monday, June 1, 1953 | day | off | night |
| Tuesday, June 2, 1953 | day | night | off |
| Wednesday, June 3, 1953 | day | night | off |
| Thursday, June 4, 1953 | off | night | day |
| Friday, June 5, 1953 | off | night | day |
| Saturday, June 6, 1953 | night | off | day |
| Sunday, June 7, 1953 | night | off | day |

"Thus, it will be noted that each group gets two consecutive days off, then works four days, then gets

two more days off, then works four nights. The calendar is only used to determine the recurrence of work days, work nights, and times off for each group. Every 12 days the cycle repeats itself so that a group which commences to work night turn on Monday night will not commence to work night turn on Monday night until 84 days later."

Judicial notice may be taken of the fact that New Castle is a city of the third class.

The history of the legislation with respect to firemen in cities of the third class begins with the Act of May 23, 1889, P. L. 277, sec. 38, which provided in general for the establishment of fire departments. The Act of March 30, 1915, P. L. 34, establishes the platoon system of day shift and night shift for cities of the second class. This system was extended to cities of the third class by the Act of July 8, 1919, P. L. 734. The essence of the platoon system was the provision that the hours of day service should not exceed 10 nor the hours of night service 14, except as necessary to equalize the hours of duty and service. Continuous service on either platoon for longer than two weeks could not be required. The new codification of third class city law by the Act of June 23, 1931, P. L. 932, incorporated the former law on the subject of the two-platoon system for firemen. The section was amended on immaterial matters by the Act of May 23, 1933, P. L. 927.

By the Act of March 16, 1937, P. L. 103, which followed the Act of April 25, 1935, P. L. 82, applicable to first and second class cities, it was provided by way of amendment that the firemen's hours of day service should not exceed 60 hours in any one calendar week and the hours of night service more than 84 in any one calendar week unless the hours of day and night service should be equalized, in which case neither should exceed 72 in any one calendar week. Then followed this language:

"The employees of such fire forces shall be allowed to have at least twenty-four consecutive hours of rest in every calendar week, and to have an annual vacation of not less than fourteen days without diminution of the salary."

The Act of May 18, 1945, P. L. 807, allowed additional service during the war then raging.

This was the standing of the legislation until the session of 1951 when two amendments were passed. The first was Act No. 641, a reënactment and revision of the Act of 1931. It was adopted June 23, 1951, P. L. 662. In this revision section 2103 was amended only by allowing additional hours of work during any war. The second, being the Act of July 17, 1951, P. L. 1008, amended section 2103 only. It is this amendment which made the changes resulting in this action. The changes are four in number: First, there is an amendment requiring "that the firemen are to perform service during such hours as the director shall fix, except as herein otherwise provided"; second, the maximum hours of service are reduced from 60 to 50 per calendar week for day service and from 84 to 70 per calendar week for night service and in combination to not more than 60 hours per calendar week; third, the amendment first above quoted which added the word "working" to the "fourteen days" for vacation time provided by previous law and added 14 days' sick leave annually and, fourth, the substitution of the word "any" for "either" platoon in the provision limiting continuous day or night service to two weeks.

Here are two amendments of section 2103 of the Third Class City Code at the same session of the legislature. Section 65 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §565, provides that where irreconcilable laws on the same subject are passed at the same session the one last adopted prevails. Section 75 of the same act requires two

amendments to the same section to be construed together if possible; but if irreconcilable the later prevails. In the case at bar this means that the words "fourteen working days" shall be construed together if possible but in any event Act 213 being adopted after Act 164 must prevail and the word "working" appears in the latter act.

The command of the legislature, whatever it is, must be obeyed. Cities of the Third Class, like all other municipal subdivisions, are the creatures of the legislature. Within the framework of the Constitution the legislature may set municipalities up and pull them down and as a part of its sovereign power may dictate the hours of work of city employes: Lighton v. Township of Abington, 336 Pa. 345; City of New Castle v. Lawrence County et al., 353 Pa. 175, 183.

With these principles in mind it is well to summarize the various commands of the legislature with reference to fire departments in third class cities to demonstrate how circumscribed is the authority of the city council with respect thereto: there must be a day platoon and a night platoon; they are to serve as the director prescribes subject to the statute; the hours of the day platoon shall not exceed 10, of the night platoon 14; the weekly hours of the day platoon shall not exceed 50, of the night platoon 70, of the combination 60; firemen shall have at least 24 hours' rest in every calendar week; they shall have a paid annual vacation of not less than 14 working days, they shall have 14 days of sick leave annually with pay; in periods of emergency they may be assigned to continuous duty; no fireman shall be compelled to serve continuous day duty or continuous night duty for more than two weeks "nor be kept on duty more than ten hours for day duty or fourteen hours for night duty except" as may be necessary to equalize the hours of duty and service or during emergencies.

The court is asked in this proceeding to declare the rights, status, and other legal relations of the City of New Castle and of its paid firemen under the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 840, and its amendments and supplements, 12 PS §831-853, inclusive. In the first place section 2103 of the Third Class City Act in its present form compels the conclusion that firemen are entitled to an annual vacation with pay at least long enough to include 14 days which they would have worked under the existing work schedules established by the director of the department having charge of the fire bureau in the City of New Castle.

The history of the legislation as above reviewed demonstrates that the legislature meant by using the word "working" day to exclude the practice of compelling firemen to accept their days off as part of their vacation. The frequent use of the phrase "calendar week" shows that the legislature knew how to provide for seven consecutive days. It might have provided for a vacation of 14 calendar days but instead they provided for working days. Nor is it reasonable to assume that days exclusive of Sundays and holidays are meant when admittedly every day is a working day for the firemen. On a parity of reasoning a vacation of 14 working days split into two or more parts must be rejected. The meaning of an annual vacation is a respite from customary work long enough to be significant.

The city presses upon the court the difficulties which will be caused by allowing firemen a vacation different and longer than the vacation allowed other city employes. It is pointed out that the relief here claimed may, in effect, give the firemen a three weeks' vacation instead of a two weeks' vacation. The obvious answer is to point out once more the paramount position of

the legislature. The courts exist to administer in a judicial fashion the commands of the legislature. The legislature has spoken. We must all obey.

Nevertheless the court may point out that the city is not as helpless in this situation as might appear. It is the current schedule of the fire department which is now under consideration. This schedule is less exacting upon firemen than the law allows. The law requires at least 24 hours of rest in each week; the present schedule allows 48 hours' rest in a week. The city is authorized to require firemen to work on continuous night turns up to two weeks, the present schedule limits such work to four days. Within the weekly limits of the 50 hours' day work, 70 hours' night work, and 60 hours of combined day and night work some plan more advantageous to the city and equitable to the other employes may be worked out.

This court has neither the power nor the disposition to dictate a course of policy to the City of New Castle in the matter of firemen's vacation. But as the statute now stands and under the current schedules of the city the law requires the making of the following

### Decree Nisi

Now, December 9, 1953, after full hearing in this case it is ordered, adjudged and decreed that the Act of June 23, 1931, P. L. 932, par. 2103, as last amended by the Act of July 17, 1951, P. L. 1008, 53 PS §12198-2103, which states that a fireman is entitled "to have an annual vacation of at least fourteen working days" means that the 14 days are not to include days which are the firemen's rest days according to existing schedules of the Fire Bureau of the City of New Castle but are to continue for 14 days exclusive of such rest days.

The costs are placed upon the City of New Castle. This decree shall become absolute unless exceptions are filed hereto within 10 days.